# CASES

### ARGUED AND DETERMINED

##### IN THE

# SUPREME COURT OF ILLINOIS.

GEORGE HUDSON *et al.* Appellants, *vs.* WILLIAM H. HUD-
SON, Appellee.

*Opinion filed December 15, 1908.*

1. PARENT AND CHILD—*conveyance from parent to child is not
presumed to be the product of fraud or undue influence.* There is
no presumption of law, from the mere fact of relationship, that a
conveyance from parent to child is the product of fraud or un-
due influence, and in order to set aside the conveyance upon such
grounds there must be proof of fraud or undue influence in fact.

2. DEEDS—*when children of grantor have no right, as heirs, to
have a conveyance set aside.* If the grantor is mentally competent
and there is no fraud or undue influence, in fact, by the grantee,
who was the grantor's son, the mere fact that the grantee failed to
keep his agreement to divide the property with his brothers con-
fers no right upon the children of the grantor, in their relation as
heirs-at-law, to have the conveyance set aside.

3. WITNESSES—*when complainants are competent to testify in
their own behalf.* Complainants in a bill to set aside a deed from
their mother to another of her children are competent to testify
in their own behalf, as in such case the defendant does not defend
as an heir but as a grantee.

APPEAL from the Circuit Court of Montgomery county;
the Hon. S. L. DWIGHT, Judge, presiding.

LANE & COOPER, and L. V. HILL, for appellants.

JETT & KINDER, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, George Hudson, Marion Hudson, James Hudson, Nellie Durston and Ida Dixon, sons and daughters of Rhoda Hudson, deceased, by their amended bill asked the circuit court of Montgomery county to set aside a deed of forty-two acres of land executed by said Rhoda Hudson on February 12, 1907, to her son, the appellee, William H. Hudson, and to set aside an assignment by said Rhoda Hudson to William H. Hudson of a certificate of deposit for $800, issued to her by the Nokomis National Bank, and to require said defendant to account to the complainants for the same. The grounds alleged for the relief prayed for were incapacity of Rhoda Hudson to make the deed and assignment and fraud and undue influence of William H. Hudson in procuring her to make the same. The incapacity and all charges of fraud and undue influence were denied and the witnesses for the respective parties were heard by the chancellor in open court, resulting in a finding in favor of the defendant. The bill was therefore dismissed at the cost of complainants for want of equity, and from the decree this appeal was taken.

The testimony was to the following effect: Rhoda Hudson was seventy-two years old at the time of the transaction and had consumption, with which she had been afflicted for a year or more, and there was no hope of her recovery. She owned forty-two acres of land, and had lived on it with her two sons, William H. Hudson and George Hudson, for sixteen or seventeen years, since the death of her husband, and the three constituted the family. The day before the deed was made, William H. Hudson, James

Hudson and a daughter of James Hudson were present in the bed-room of Rhoda Hudson and she then proposed to make a deed of the land to James Hudson, but he said he did not want it. She then asked William whether he would divide the land equally with James if she made a deed to him and give George Hudson $400 of the money from the certificate of deposit. William said that he would, and if she made the deed to him he would make part of the land over to James and give George $400. James said that it would be all right for her to make the deed to William and he would be satisfied to get twenty acres. The next morning William and James went to the office of Baxter Williams, a notary public, and told him that they wanted the deed made, and he told them to bring in the old deed and he would prepare the deed at his leisure. Later in the day William took the old deed, containing the description of the property, to the notary, and the notary filled out a deed and went to the farm residence in the evening to have it executed. That was February 12, 1907, and Charles Tobias, who lived on an adjoining farm, also came to witness the deed. The notary gave the deed to Tobias and told him to explain it to Mrs. Hudson. Tobias told Mrs. Hudson that they had come to fix the deed, and asked her if she understood it, and she said yes. He told her that this was a warranty deed from her to William, and she asked if it was for all of her land, and he told her yes. She replied that she wanted it all to go to William, as he had stayed with her and been good to her, and she asked the witness what he thought about it. He told her that was not for him to say; that he was not there to dispose of her property but only to do what she wanted. She then signed the deed by her mark and acknowledged it. The notary was going to take the deed back to put on his seal and asked her what he should do with it, and she said to give it to William,—that it would be his. William was not in the room when the deed was executed and a daughter of James was

present. James Hudson got the deed from the notary and had it recorded and paid the recorder's fee, thinking at that time that he would get one-half of the land.

Mrs. Hudson had $800 deposited in the Nokomis National Bank and held a certificate for the deposit dated March 21, 1906. In June, 1906, Henry S. Baker was at her home, and she told him she wanted William and George to receive the $800 equally and wanted it transferred to the boys in case she died. Baker wrote an endorsement on the certificate making it payable to William and George, and also wrote this on it: "In case she gets well, to become null and void." She signed the endorsement with her mark and Baker witnessed it. On February 25, 1907, Mrs. Hudson handed the certificate to Dr. M. L. Moyer and asked him to erase George's name, saying that she wanted William to have it to pay her expenses and build a tombstone and have the balance. The doctor erased George's name with a pen, she holding the end of the pen as he drew it through the name, and the doctor signed his name as a witness. Mrs. Hudson gave to the doctor her reasons for making the change and he handed her back the certificate. William Hudson took the certificate to the bank, and the cashier told him that the language on the certificate made a qualified endorsement, and William took the certificate away and afterward returned it with the words, "In case she gets well, to become null and void," erased, and the cashier paid the money to William on February 26, 1907. She died March 10, 1907. George testified that his mother's directions were to pay her funeral expenses and put up a monument out of the $800, and after William got the money he asked him to take out the monument expenses, amounting to $225, which William had paid, and to give him his half, and when the endorsement was first made George took the certificate down to the bank and let the banker look at the endorsement and see if it was all right.

There was much testimony as to the condition of Mrs. Hudson at the time of the transactions, and all the witnesses agreed that she was very weak physically and very much emaciated. She had suffered from consumption for more than a year and her case was hopeless. James and George in their testimony did not express any opinion as to whether she was competent to transact business at the time the deed was made, but a number of witnesses expressed the opinion that she was not competent. An examination of their testimony leads to the conclusion that their opinion was based on her weak physical condition, and it was the opinion of a number of other witnesses that she was entirely capable of transacting business. She knew her friends and talked with them when they came to see her, and on the occasion when the deed was executed there were a few minutes of conversation about her health before the notary took the deed out of his pocket. So far as appears from any testimony she talked rationally at all times and showed no signs of any mental disturbance. George and James were both perfectly satisfied with the transaction provided they got their half, and the real trouble seems to be that William did not carry out the agreement which they alleged. That fact, if it is a fact, would not confer any right upon the complainants in their relation to their mother as heirs-at-law. The chancellor heard the witnesses and had superior opportunities to determine what weight should be given to the opinions of witnesses as to the competency of Mrs. Hudson to make the transfers, and we cannot say that his finding was wrong.

In coming to that conclusion the testimony of the complainants in their own behalf is regarded as competent and has been considered. It is contended here that they were not competent, and the decision in *Guild* v. *Warne*, 149 Ill. 105, is relied upon as so holding. In that case the defendants were the administrator and heirs of John W. Guild

and were defending in that capacity, so that the statute rendered their adversaries incompetent; but in this case William H. Hudson was not defending as the heir-at-law of his mother, but as grantee, and the complainants were competent to testify. *Gage* v. *Eddy,* 179 Ill. 492.

There is no presumption of law that a conveyance from a parent to a child is the product of fraud or undue influence, (*Sears* v. *Vaughan,* 230 Ill. 572,) but there must be proof of fraud or undue influence in fact. In this case it appears that the deed was made by Mrs. Hudson of her own free will; that she proposed to make it to James, and when he declined, it was made to William, who was absent when the deed was executed. There is an entire absence of any evidence tending to prove fraud or undue influence at the time the deed was executed. The certificate of deposit was originally endorsed to the two sons William and George, but afterward the name of George was erased at the request of Mrs. Hudson by Dr. Moyer, and there is nothing tending to show that her action was by the persuasion or with the connivance of William. There is no evidence that there was any fraud in the subsequent erasure making the endorsement absolute instead of qualified, and as matter of fact she did not recover, so that William would have been entitled to the money in any event. Whether he made an agreement to divide the land with his brother James, and the money, over and above the funeral expenses and cost of the monument, with George, and then failed to keep his agreement, is not involved in this case.

We find no reason for disturbing the decree, and it is affirmed.

*Decree affirmed.*