ISRAEL S. MEYER, Appellee, *vs.* HARRY E. MEYER, Appellant.

*Opinion filed December 21, 1910.*

1. DEEDS—*deed made in consideration of support will not be set aside if grantee has substantially performed his contract.* A deed voluntarily made by a father to his son in consideration of the latter's agreement to care for and support the grantor and his wife during their lifetime, will not be set aside in equity if the grantee has substantially and fairly performed his contract, even though he may have failed in trivial matters.

2. APPEALS AND ERRORS—*when question of grantee's violation of a certain covenant is not presented for review.* The question of the grantee's violation of a covenant in his deed that he should not sell any part of the land during the grantor's lifetime is not presented for review on appeal from a decree setting aside the deed on other grounds, where the master found specially against such contention and no objection or exception was taken to that finding, and where the decree was in conformity with the master's findings and no cross-error is assigned.

APPEAL from the Circuit Court of Vermilion county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

G. W. SALMANS, for appellant.

CHARLES G. TAYLOR, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is a bill in chancery filed May 5, 1908, in the circuit court of Vermilion county, by Israel S. Meyer, the appellee, to set aside a certain deed of conveyance made to his son, Harry E. Meyer, the appellant, on October 3, 1895. The instrument sought to be set aside was a voluntary conveyance, in the form of a contract, made by appellee, who was then seventy-five years of age, with the appellant, his son, by which he conveyed to the appellant his farm of 145 acres and certain personal property thereon, the consideration being that the son should care for the grantor and

his wife, Sophia Meyer, and should support, maintain and furnish them with the necessaries of life and provide a home for them in the homestead then upon the premises for and during their natural lives and the life of the survivor of them, and that he should pay all the legal indebtedness of the grantor then existing except security debts, and that at the death of the survivor of his parents he should pay to Bruce A. Meyer, son of the grantor, the sum of $250, without interest, and $250, without interest, to Annie L. Ray, a daughter of the grantor. The instrument also provided that the appellant should not sell the real estate conveyed, or any part thereof, until the death of the grantor and his wife, and also in case that appellant should fail to keep the covenants and agreements assumed by him, or any part of the same, during the lifetime of the grantor or the said Sophia Meyer, then the conveyance should be forfeited by appellant and become of no effect. This instrument was drawn and executed by Israel S. Meyer without the knowledge of appellant, and the first knowledge appellant had of the intention of his·father to make such a conveyance and his desire to enter into such contract was when his father presented the instrument to him for his signature. Appellant was reluctant about accepting the conveyance and entering into the contract but was prevailed upon by his father to do so, and thereupon took possession of the real estate and the personal property so conveyed. At that time the mother was fifty-eight years of age, and the family consisted only of herself, appellee and appellant. About ten years later appellant married. In the spring of 1907 Sophia Meyer was taken sick, and she died in August of that year. A few days before her death appellee filed a bill in the circuit court of Vermilion county to set aside this same instrument, but that bill was dismissed for want of prosecution. By the present bill appellee sets up the execution of the instrument and the delivery of the property to his son, and alleges that appellant has not complied with his

part of the contract; that he had not furnished appellee and his wife a suitable and proper home, and had not properly maintained them and furnished them with the necessaries of life during the lifetime of Sophia Meyer, and had not since the death of Sophia Meyer furnished him with a suitable home and the necessaries of life, but that, on the contrary, appellant had treated Sophia Meyer unkindly during her lifetime and did not at all times furnish her with the comforts of a home; that during the joint lives of himself and wife the appellant had frequently treated them both with unkindness, and that since the death of Sophia Meyer appellee had frequently been left without sufficient clothing, bedding and food. The bill further alleged that the wife of appellant had treated appellee and his wife with disrespect and unkindness, and that both appellant and his wife had failed to treat appellee with kindness and furnish him with a comfortable and pleasant home and were neglectful of his pleasure and comfort. By an amendment to the bill appellee set up that the appellant had sold portions of the real estate in violation of the contract. Appellant answered, denying all the allegations of the bill in respect to his neglect of his parents and his failure to comply with his part of the contract. The cause was referred to the master in chancery to take the proofs and report the same, together with his conclusions. The master reported, finding all the allegations of the bill in reference to the treatment of appellee and his wife by appellant had been proven except that in reference to the insufficiency of the bedding furnished, and recommended that a decree be entered setting aside and declaring void the deed in question and re-investing the complainant with title to the premises. The court overruled appellant's exceptions to the master's report and entered a decree in accordance therewith. From this decree appellant has brought the case by appeal to this court.

The only matter presented by this record for review is the question of fact whether appellant has failed to comply

with his part of the contract. Appellee testified in his own behalf, and from his testimony it appears that he has lived continually with his son from the time the contract or deed was made until the time of the hearing, and at that time was still living with appellant and was being supported by him. He admitted that up until the time his son was married his treatment of him and his wife had been everything that could be desired, and that he had often boasted that appellant was the best boy in the State of Illinois, and that even since the time of his marriage the appellant had never spoken an unkind word to him. The ill-treatment he complained of was, that the wife of appellant did not wait upon him properly when the family were seated at the table and did not hand food to him as she did to her husband, and that he was left to rely upon his son to wait upon him or to help himself; that on one occasion he was taken sick and his son telephoned for the doctor; that when the doctor arrived he made an examination of appellee and held a conversation with the son, of which appellee heard but a part, and left some medicine to be administered to him; that appellant afterwards went to his room up-stairs, together with his wife, where they retired for the night, leaving appellee to take the medicine himself. He testified that he did take the medicine as directed and by morning had practically recovered from the illness; that on another occasion he was taken ill in the night and suffered great inconvenience, but admitted that he did not inform either his son or his wife of the illness and that they did not know of it; that in the morning he walked to the office of his physician, secured some medicine for his ailment and soon recovered; that appellant and his wife did not furnish him with sufficient bed clothing to keep him warm, and that on one occasion when he was sick it became necessary for him to get up in the night and procure fuel to replenish his fire; that appellant did not furnish him with sufficient wearing apparel, and that the wife of appellant did not wash his clothing as

promptly as he thought it should be done; and that on one occasion, upon returning from a visit to the city of New York, he arrived at Danville Junction, in Vermilion county, and having no money left was compelled to walk from there (twelve miles) to the home of his son. As to the matter of the bed clothing the master found against appellee, and held that contention was not supported by the evidence.

Appellee further testified that during the last illness of his wife the appellant and his wife both neglected her and failed to give her proper attention; that she was allowed to remain upon her sick-bed in an unclean condition and without proper food and attention. Except as to the treatment of Sophia Meyer by appellant and his wife appellee was not supported by the testimony of any other witness. The daughter, Annie, was married and resided in the city of Chicago. Upon receipt of a telegram from appellant that her mother was very ill she went to his home, in Vermilion county, and testifies that she found her mother in a very unclean condition, and that she was not receiving any attention from either appellant or his wife. In this Mrs. Ray is supported by the testimony of one neighbor woman and to some extent by the attending physician, who testified that Mrs. Meyer, for about a week prior to the arrival of Mrs. Ray, had not been kept in as cleanly a condition as she could have been. The doctor, however, testified that appellant did everything for his mother that he could, and was only prevented from doing more by reason of lack of knowledge and experience. In addition to the condition alleged to have existed during the last illness of Mrs. Meyer, appellee testified that on a number of occasions appellant and his wife had left the old people on Sundays and had remained away all day without leaving proper or sufficient food for them. On the other hand, a large number of the neighbors and acquaintances of Israel S. Meyer and his son testified that during the whole time, from the execution of

the contract in question until the time of the hearing, they had visited frequently at the home of appellant and appellee and had observed the conduct of appellant and his wife toward appellee and his wife and their treatment of them, and without exception they testified that appellant and his wife had treated the old folks with the utmost kindness and consideration, and that there apparently existed between them a high degree of good will and affection. It was shown that as soon as Mrs. Meyer was taken sick in the spring of 1907 her son summoned a physician, and from that time until her death she was constantly under medical care; that prior to the time he sent for his sister, Mrs. Ray, he, together with the physician, had attempted to secure the services of a nurse for his mother; that immediately after Mrs. Ray's arrival a trained nurse was secured and took charge of Mrs. Meyer for a period of several weeks, until she was discharged by Israel S. Meyer; that thereafter a neighbor girl was employed to assist in taking care of the mother, and after a short time the mother was removed to a hospital, where she remained until she had recovered somewhat of her illness and desired to be taken home. Upon her removal to her home the services of another nurse were procured by appellant, and that nurse remained in attendance upon her until the date of her death.

It is not claimed or testified to by any witness that during the time from the employment of the first nurse until the death of Mrs. Meyer she did not receive the best possible care and attention. Many neighbors testified that Mrs. Meyer told them, during her last illness, of her deep affection for the wife of her son, and that she always referred to her and addressed her in affectionate and endearing terms and frequently expressed her appreciation of what she and her son had done for her. One of appellee's witnesses, a neighbor woman, who was called to testify to Mrs. Meyer's condition and the care given her during her last sickness and prior to the time any nurse was employed, testified that

she visited there during that time and that Mrs. Meyer had good care and was kept as clean as could be expected; that she never saw her mistreated, and that appellant was always attentive to her and solicitous of her health and welfare.

The evidence tends to prove that before the appellee filed his former bill to set aside this deed he went to the residence of a neighbor to telephone to his attorney in Danville, at which time he explained to this neighbor that his son had done nothing to offend or displease him but that he had been a good boy. After the bill had been filed he told another friend—a neighbor—that he had started to do something that he did not know was exactly right; that he had undertaken to set aside the deed he had made his son about twelve years before; that he did not like his son's wife and that his daughter and his other son wanted him to do this, but he did not think he would pay any attention to it but would just let it go, as upon reflection he did not think it was right. This neighbor then asked him if his son had been mean to him and mistreated him, and he said he had not, and that a better boy than Harry had never lived. The appellant testified that his father told him, after he had filed the former bill, he wanted to drop the matter, and that he would make a visit to Oklahoma and allow the matter to go by default, and that upon his father's request he furnished him with the necessary money. The trip to Oklahoma was made and the bill dismissed. While there is no direct proof that she attempted to influence her father in this matter, it is significant that the principal testimony, aside from that given by the appellee and relied upon to sustain the bill, is that of Mrs. Ray, who is described by one of the neighbors as doing nothing while she was visiting her mother during her last sickness except to make trouble. The only disinterested witness who testified to any substantial matters in support of the allegations of the bill was Mrs. Bennett, and she is contradicted by the

testimony of all the other friends and neighbors who were called as witnesses.

From a fair consideration of all the testimony it is apparent that appellant has substantially and fairly complied with his contract. Even were this not so and he had failed in some small particular to treat his parents as he should have treated them under his contract, the court would not be warranted in setting the deed aside and wholly depriving appellant of all the fruits of his labor on that account. "A slight or partial neglect on the part of one of the contracting parties to observe some of the terms or conditions of the contract will not justify the other party in abandoning or rescinding the same. A deed or contract made in consideration of the support of the grantors will only be set aside in equity where there has been an entire failure or refusal to perform the agreement, or at least such a substantial failure to perform the contract in respect to material matters as would render the performance of the rest a thing different from what was contracted." *Pittenger* v. *Pittenger,* 208 Ill. 582.

Appellee contends that by the sale of timber and gravel appellant so violated the terms of the contract that appellee is entitled to have the conveyance set aside. The master specifically found against appellee on this contention and appellee neither objected nor excepted to this finding. The decree was in conformity with the findings of the master. No cross-errors are assigned, so that question has not been preserved for review. The testimony shows that the timber and gravel were sold with the full knowledge and consent of appellee, and that he even assisted in the removal of that which was sold and received a part of the money paid for it.

It is apparent from the evidence here presented that appellant has, up to the time of the filing of the bill herein, substantially complied with his contract. The court erred in

overruling appellant's exceptions to the master's report and in decreeing the relief prayed for by the bill.

The decree of the circuit court is reversed and the cause is remanded to that court, with directions to sustain the exceptions to the master's report and to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*