R. E. SMITH *et al.* Defendants in Error, *vs.* REBECCA KOPITZKI *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1912.*

1. DEEDS—*when opinions as to grantor's mental powers are not entitled to much weight.* Brief conversations and petty business dealings between the grantor and strangers, and the opinions based thereon, are competent evidence upon the subject of the grantor's mental powers, but they are not entitled to great weight.

2. SAME—*when deed will not be set aside for grantor's lack of mental capacity.* A deed will not be set aside for lack of mental capacity by the grantor where the preponderance of the evidence is that whatever temporary aberrations may have affected him at other times, he had sufficient mental capacity, when he made the deed, to understand that particular business and its effect and to exercise his will in regard to it.

3. SAME—*undue influence which will avoid a deed must have operated when deed was made.* The undue influence which will avoid a deed must be a wrongful influence operating at the time of the execution of the instrument to the extent of depriving the grantor of his free agency.

4. SAME—*undue influence not presumed from fact of relationship of parent and child.* The fact of the relationship of parent and child does not, where the parent is the grantor and the child the grantee, raise any presumption of undue influence, and in such

case there must be proof of fraud or undue influence in fact in order to avoid the deed·on those grounds.

· 5. The court reviews the evidence in this case, and holds that as to the first of the two deeds set aside by the decree the evidence is not sufficient to sustain the decree, but that as to the second deed, made some five years later, when the grantor's condition was materially changed, the evidence sustains the decree.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. GEORGE W. PATTON, Judge, presiding.

BARNES & MAGOON, for plaintiffs in error.

WOLFENBARGER & MAY, and JOSEPH A. WEIL, for defendants in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

This is a writ of error prosecuted to reverse a decree of the circuit court of Woodford county setting aside two deeds on account of the mental incapacity of the grantor and the undue influence of the grantee. Jacob Patterson, the grantor, died on July 13, 1908, at the age of ninety-two years. His heirs were his daughter, Rebecca Kopitzki, the plaintiff in error, and his grandchildren, the defendants in error, who are the children of a daughter and a son who died in his lifetime. The other plaintiff in error is Joseph Kopitzki, Rebecca's husband. The deeds were made to Rebecca Kopitzki, one on October 19, 1903, the other on February 7, 1908, each conveying eighty acres of land, the two tracts constituting the grantor's farm.

Jacob Patterson came from Ohio in 1853 to Woodford county, where he spent the rest of his life. His wife died in 1892. From that time his daughter and her husband lived with him on the farm in controversy. On June 15, 1898, while crossing the railroad track in a buggy, he was struck by a train and severely injured, sustaining a frac-

ture of the jaw, the loss of the sight of one eye and the partial loss of the sight of the other, and other serious injuries. The defendants in error contend that after this accident he was affected with senile dementia and had not sufficient mental capacity for the transaction of business but was under the control of his daughter, who sustained a fiduciary relation to him and who caused him to execute the deeds in question without consideration.

The second deed reserved a life estate to the grantor. The first reserved to the grantor the right to occupy and live in his home place on the land and to be boarded and washed for by the grantee during the remainder of his life. Other than this latter so-called reservation no consideration existed for either deed. They are to be sustained, if at all, as gifts. The questions involved are therefore the mental capacity of the grantor, the undue influence of the grantee and the existence of the fiduciary relation.

The same contrariety of opinions exists among the witnesses as is usually found in cases involving the acts of an old man who has ceased to be engaged in active business. Twenty-three witnesses were examined for the defendants in error, nine of whom were complainants or their spouses. Thirty-five were examined for the plaintiffs in error besides themselves. The abstract consists of 278 pages and each side has filed a brief of over 135 pages, devoted almost entirely, as was, of course, inevitable, to a discussion of the testimony. These facts are stated to indicate that it is impossible, within the reasonable limits of an opinion, to set out and discuss the testimony of the witnesses. We have read the abstract and the briefs, and without attempting to set down an analysis of the testimony shall state our conclusions.

Much of the testimony is of little value because the opinions expressed as to the grantor's capacity appear to be based upon inadequate opportunities of observation. Brief casual conversations at chance meetings, particularly with

strangers, small purchases of tobacco, and transactions of a similar character, do not form a satisfactory basis for determining a person's mental powers. While such occurrences, and opinions based on them, are competent evidence, they do not carry much weight. Patterson was eighty-two years old at the time of his injury. He prosecuted an action against the railroad company, in which there were two trials and one reversal by the Appellate Court. He attended these trials and testified. The case was finally settled and the railroad company paid the amount agreed upon. Patterson employed counsel and settled with and paid them, and it does not seem to have occurred to anyone that he was not competent to transact that business. He drove about to the various small towns in the neighborhood, and to some extent transacted business connected with his farm, sold grain, bought lumber, barbed wire, a buggy and harness and other articles. The complainants themselves, and the husbands of some of them, testified to facts tending to show mental incapacity at the time, and two of them testify to his signing in blank, and giving to them, promissory notes without any explanation or reason for it, when, as they said, they were testing his mind with a view to having a conservator appointed. No application, however, was made for this purpose. Other witnesses testified to the mental incapacity of the testator, but we are of the opinion that the preponderance of the evidence does not show such incapacity at the time of the execution of the first deed. This deed was written by J. C. Irving and acknowledged before him as a notary public. Irving had been circuit clerk of Woodford county and master in chancery. He testified that Jacob Patterson came into his office in Metamora alone and told him that he wanted to make a deed of the eighty acres to his daughter, Becky. He talked of making a will, but Irving advised him that it was safer to make a deed and deliver it to her. Irving wrote the deed and took the ac-

knowledgment and Patterson paid him and took the deed away. Whatever temporary aberrations might have occurred to Patterson, the preponderance of the evidence is that he had at that time the mental capacity to understand that particular business and its effect and to exercise his will in regard to it. There was some evidence tending to show that Irving had previously expressed the opinion that Patterson was not competent to execute a deed, but we do not regard it as overcoming his testimony. Whatever may have been the effect of Mrs. Kopitzki's abusive talk about the complainants, it cannot be presumed that it was effective at the time of making this deed, when her father was miles away from her, alone, and, so far as the evidence shows, acting entirely on his own initiative. The undue influence which will avoid a deed must be a wrongful influence, operating at the time of the execution of the instrument to the extent of depriving the grantor of his free agency. (*Sears* v. *Vaughan,* 230 Ill. 572.) The evidence does not justify the conclusion that Mrs. Kopitzki- dominated her father at the time this deed was executed, to the extent of substituting her will for his. It cannot be presumed from the mere fact of relationship that a conveyance from a parent to a child is the result of fraud or undue influence. There must be proof of fraud or undue influence in fact. (*Sears* v. *Vaughan, supra; Hudson* v. *Hudson,* 237 Ill. 9.) While Mrs. Kopitzki's conduct toward her father was kind and filial, the evidence does not indicate that she controlled him in business matters or that she occupied toward him, as to such matters, a fiduciary relation.

The second deed was made five years after the first and only five months before Jacob· Patterson's death. The conditions had changed. Most of the testimony as to his mental condition related to a time not later than 1905 or 1906. This second deed was written by Jesse G. Mundell, of Cazenovia, a small town about four miles from Patterson's farm. He testified that Mrs. Kopitzki telephoned him

to inquire if he could come out on some business right away. He told her he could, and she told him to bring with him his notary's seal and a blank deed and she would tell him what she wanted when he got there. He drove out. Mrs. Kopitzki met him at the door and told him to go in and see grandpa; that he wanted Mundell to make a deed out for him. They went in together and talked twenty minutes or a half hour, and then Mrs. Kopitzki again said grandpa wanted to make a deed to her for the north eighty. She had the description. Mundell made out the deed, and when he came to the consideration he said, "Grandpa, what is the consideration?" Patterson said, "I don't know." Mundell then asked Mrs. Kopitzki what the consideration would be, and she said, "Make it a dollar and love," but Mundell told her he thought it would be better to make it some consideration and suggested $500, and she said, "All right," and it was written $500. Mundell told Patterson it was a deed for the north eighty and asked him if he wanted to give it to Becky. Patterson answered "yes." Mundell asked him whether he could sign his name, and he answered that he did not know whether he could or not. Two witnesses were then brought in. Patterson made his mark and the witness attested it.

It is reasonably manifest from the testimony that Patterson's mental condition had become much worse than when the former deed was executed. He did nothing to indicate a wish of his own to execute the second deed. The summons to Mundell came from Mrs. Kopitzki. When Mundell arrived she told him what was wanted. Patterson did not mention the subject of the deed and after a half hour's wait Mrs. Kopitzki did. Patterson apparently took no interest in the matter, did not know what the consideration should be, and apparently did not care about that or any other feature of the transaction. His mind was not in such a condition as to understand the nature and effect of his act and to form and carry out an independent

purpose. This deed was properly set aside. The cause was heard by the chancellor in open court. While we recognize the advantage he had of seeing the witnesses and hearing them testify and the weight which should be given his decree under such circumstances, yet we are of the opinion, from a consideration of the whole record, that the evidence was not sufficient to justify the setting aside of the first deed on any of the grounds stated.

The decree is reversed and the cause remanded, with directions to dismiss the bill as to the first deed and to set aside the second deed. Each party will pay half the costs in both courts.

*Reversed and remanded, with directions.*