(No. 13588.—Reversed in part and remanded.)
MARY A. WATERS et al. Appellants, vs. MARGARET LAWLER
et al. Appellees.

*Opinion filed February 15, 1921—Rehearing denied April 6, 1921.*

1. PARTITION—*complainant may testify where defendants are defending as grantees and not as heirs.* One of the complainants suing as heirs in a partition suit may testify in his own behalf if the defendants, who are also heirs, are not defending as heirs but as grantees of the ancestor, where the only issue made by the pleadings is the validity of the deeds to said grantees.  ·

2. SAME—*when declarations of grantor are admissible although effect is to defeat subsequent deed.* Declarations of a grantor in a deed when the grantee is not present cannot be admitted for the purpose of invalidating the deed, but such declarations are admissible to prove delivery although the effect of establishing such conveyance will be to render a subsequent deed made by the same grantor ineffective.  ·

3. SAME—*when burden is on grantor or his successors to prove non-delivery.* The presumption is in favor of the delivery of a deed of voluntary settlement, and the burden is on the grantor, and those claiming through and under him, to show that there has been no delivery.  ·

·4. SAME—*effect of destruction of deed by grantor after delivery.* Where a deed is delivered in escrow, the grantor surrenders all control over it and the custodian takes it, without reservation, as representative of the grantee, and a subsequent destruction of the deed by the grantor does not divest title, and if the contents of the destroyed deed can be sufficiently proven by the declarations of the grantor and other testimony it must be given effect.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

MARY DOUBET CASSELL, and J. J. WELSH, for appellants Mary Waters and Jane Wycoff; SHELTON F. MC-GRATH, for appellant John Megan.

WEIL & BARTLEY, for appellee Margaret Lawler; DAILEY, MILLER, McCORMICK, & RADLEY, for other appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Thomas Megan died August 30, 1917, at Peoria, Illinois, leaving him surviving as his only heirs-at-law, appellants, Mary A. Waters, Janie Wycoff and John Megan, and appellees Margaret Lawler, Lizzie Schelkopf and James Megan. The evidence tends to show that twelve years prior to his death he executed three warranty deeds, by which he disposed of all his real estate. By one deed he conveyed the north half of the northeast quarter of section 28, township 11, north, range 5, east of the fourth principal meridian, to appellant John Megan; by another deed the south half of the same quarter section to appellee Margaret Lawler, and by the third deed part of the north half of section 32, in the same township and range, containing 146.88 acres, more or less, to appellees James Megan and Lizzie Schelkopf. September 16, 1905, he took these three deeds to the banking firm of Auten & Auten, at Princeville, in Peoria county, and left them with Charles Auten, giving him instructions regarding the disposition of the deeds, and Auten indorsed on the envelope in which each of the deeds was inclosed, the name of the grantee and made the following memorandum thereon: "To be left with Auten & Auten until after the death of Thomas Megan, when it is to be delivered." The three deeds remained continuously in the possession of Auten & Auten from the date of their delivery until April 26, 1913, when Thomas Megan called at the bank and requested the deed which named John Megan as grantee. Charles Auten took this deed from the box where he kept the deed and after some forty-five minutes' discussion with Thomas Megan, explaining to him the consequences of his act, he delivered the deed to him, and he destroyed it and the envelope containing it. He gave as his reason for destroying the deed a dislike which he entertained for certain members of John Megan's family

and his desire to leave the 80 acres to two of his grand-sons, Thomas O. and Everett Megan, sons of James Megan, all appellees here. He executed a new deed conveying the same premises to said grandsons and left this new deed with Auten & Auten with the same indorsement upon the envelope. Two of the deeds originally deposited and this new deed remained in the possession of the bankers until the death of Thomas Megan, at which time Charles Auten delivered the deeds to the grantees respectively named therein, who thereupon placed them on record.

Appellants filed their bill in the circuit court of Peoria county, alleging substantially the facts hereinbefore stated, and that none of the deeds were delivered and were therefore ineffective to pass title to the property, and alleging further that Thomas Megan died seized of the 306 acres of land here in dispute, and prayed partition. All allegations concerning the deed in which appellant John Megan was grantee were on information and belief. John Megan swore to the bill. After considerable testimony had been taken, including the testimony of the Autens, John Megan by leave of court withdrew as complainant and was made a party defendant. He filed an answer denying the non-delivery of the deeds and asserting his ownership of the north 80 acres of the quarter section. He filed a cross-bill, which was substantially the same as his answer. Appellees James Megan, Lizzie Schelkopf, Everett Megan and Thomas O. Megan filed a joint answer to the original bill and a similar answer to the cross-bill. They deny that Thomas Megan died seized of the land in question, and state that all the deeds except the destroyed deed were properly executed and delivered and conveyed the real estate described therein to the respective grantees. Appellee Margaret Lawler answered the original bill and the cross-bill, denying that the deed naming her as grantee was not properly delivered, and stating that it was a valid deed and that it conveyed the south 80 acres of the quarter section to

her in fee simple, and stating further that she knows nothing about the other deeds.

The cause was referred to a special master, who heard the evidence and reported his findings of fact and conclusions of law. He found, among other things, that Thomas Megan determined upon and adopted a plan for the distribution of his real estate to and among certain of his children, and that pursuant to this plan he made and executed the three warranty deeds, distributing his land as set forth in the first paragraph of this opinion; that after the execution and acknowledgment of said deeds he delivered them to Charles Auten, a member of the firm of Auten & Auten, September 16, 1905, and gave Charles Auten certain directions for his guidance with reference to the custody and final disposition of said deeds; that Auten enclosed each of said deeds in a sealed envelope, upon the back of which he indorsed a memorandum of what he deemed to be the material portion of the directions so given him; that the deed to John Megan was destroyed by Thomas Megan on April 26, 1913, and that a new deed naming Everett and Thomas O. Megan grantees was thereupon executed and delivered to the Autens with the same directions theretofore given regarding the other three deeds; that because of the defective memory of Charles Auten there is no proof in the record to show clearly the directions given said Auten regarding the deed naming John Megan grantee, and that it must therefore be presumed that Thomas Megan delivered said deed to the Autens to hold the same as the agents of the grantor, and that the deed therefore conveyed no title to John Megan; that all the other deeds were properly delivered; that Thomas Megan had no title to the property in controversy at the time of his death, and recommended that the original bill and the cross-bill be dismissed for want of equity. Objections were filed to the master's findings, but the master overruled the same and filed his report. The chancellor ordered the objections to

stand as exceptions, overruled the exceptions and entered his decree dismissing the original bill and the cross-bill for want of equity. From that decree appellants prosecute this appeal.

Charles Auten testified, in substance, that September 16, 1905, Thomas Megan brought deeds to the banking house of Auten & Auten and delivered them to witness with directions for their custody and disposition; that he has no distinct recollection of the transaction further than the memoranda on the envelopes; that he has no recollection of any kind as to what grantor said or did at that time beyond what appears from the memoranda on the envelopes, which memoranda are in the handwriting of witness; that he put the deeds in the vault and that they remained there until April 26, 1913, when Thomas Megan called at the bank and withdrew a deed from his possession wherein John Megan was the grantee; that he has no distinct recollection of the deed to John Megan being deposited at the same time the other deeds were deposited, on September 16, 1905; that he cannot say it was deposited at that time nor can he say that it was not deposited then; that when he delivered the deed to grantor, in April, 1913, it was in an envelope on which a memorandum was written, but that he does not remember what this memorandum stated; that he prepared the new deed on the 26th of April, and that he took charge of the deed for the grantor with instructions to deliver it to the grantee after the death of the grantor. Witness testified that there were but two transactions with Thomas Megan with respect to deeds so far as he remembers, and that these transactions were on September 16, 1905, and on April 26, 1913. He further testified that no other person had access to the vault where these deeds were kept, except his brothers, Peter and Edward. Both these men testified that they at no time received a deed from Thomas Megan for safe keeping, and that they have no

recollection whatever regarding any instructions concerning any of the deeds.

John Megan was called as a witness by appellants Mary A. Waters and Janie Wycoff. He testified that he was the youngest son of Thomas Megan, deceased, and that he was born on the place described in the deeds to himself and his sister, Margaret Lawler; that he grew up on this farm, and after he was married his father made his home with him until 1905; that the improvements on the place consist of a house, which is on the north 80, and a barn and other outbuildings, which are on the south 80; that in the summer of 1904 his father told him he was going to give him the north 80 of the home place, with the house on it, and that he was going to give the south 80 to his sister Margaret, saying to the witness, "That will give you a chance to buy her out." Witness relates other matters concerning the division of the property which are not important here. He further testified that his father said that he was going to make deeds to the property, so that when he died all the children would have to do would be to get the deeds and put them on record, adding, "That will keep the lawyers out." Witness related a second conversation with his father which took place in the latter part of September, 1905, in which he told witness that he had given him the north 80 and had made a deed for it and left it with the Autens, and that he had made a deed to Margaret for the south 80, and that he could arrange to buy Margaret's share. Witness further testified that they had just finished building a porch on the house, and that his father told him that it was the last money he was going to spend on the place, and if witness wanted to have any further repairing done he would have to pay for it himself, because the place belonged to witness.

Robert Whittaker testified that he lived across the road from Thomas Megan for more than sixty years, and that a year or two before he moved off the farm he had a conver-

sation with Megan regarding the division of their property among their children. He testified that Megan said to him that he was going to give John the north 80 of the home place and Margaret the other 80, so that John could buy her out. He left the farm in June, 1905.

George Carrigan testified that in 1903 or 1904 he was employed as a farm hand on the Megan place, and that Thomas Megan remarked to him that "he did not expect John would ever move off the place."

Appellees contend, first, that John Megan was not a competent witness because appellees were defending as the heirs of Thomas Megan, deceased. This contention cannot be sustained. Appellants Waters and Wycoff were suing as heirs of their father, but they called John Megan as a witness and raise no question as to his competency. Appellees Everett and Thomas O. Megan are not heirs of their grandfather, because their father is still living. None of appellees are defending as heirs, but all are defending as grantees in their respective deeds. No issue is made by the pleadings except the validity of the deeds. The original bill charges that none of these deeds were delivered and that all of this real estate descended to appellants and appellees as heirs-at-law. Appellees all deny that allegation, and it seems perfectly clear that they are not defending as heirs. John Megan was a competent witness. *Hudson* v. *Hudson,* 237 Ill. 9; *Grindle* v. *Grindle,* 240 id. 143; *Johnson* v. *Fulk,* 282 id. 328.

The appellees next contend that the declarations of the grantor with respect to his purpose to convey the north 80 to John Megan were improperly received in evidence because the statements had a tendency to defeat the deed given by Thomas Megan to Thomas O. and Everett Megan. The declarations of a grantor in a deed when the grantee is not present cannot be admitted for the purpose of invalidating the deed, but such declarations are competent for the purpose of showing the intention of the grantor

as to the delivery of the deed. Evidence on the question of delivery does not contradict or vary the terms of the instrument but bears on the question whether the instrument in effect ever had a legal existence. (*Potter* v. *Barringer,* 236 Ill. 224; *Shipley* v. *Shipley,* 274 id. 506.) The declarations of Thomas Megan related by John Megan, Whittaker and Carrigan tended only to prove delivery of the deed to John Megan and did not tend to invalidate the deed to Thomas O. and Everett Megan. While the effect of establishing the deed to John Megan rendered the deed to Thomas O. and Everett Megan ineffective to pass title, it was not because their deed was void but it was because grantor had no title to the property which the deed purported to convey.

The evidence in this record shows that the execution of these deeds was pursuant to grantor's plan to distribute his real estate among certain of his children. It is well settled by the adjudicated cases that the law presumes much more in favor of the delivery of a deed of voluntary settlement than an ordinary bargain and sale. The presumption of law is in favor of the delivery, and the burden of proof is on the grantor, and those claiming through him, to show that there was no delivery. (*Baker* v. *Hall,* 214 Ill. 364; *Hoyt* v. *Northup,* 256 id. 604; *Newman* v. *Workman,* 284 id. 77; *Jones* v. *Schmidt,* 290 id. 97.) We think the evidence clearly shows that the deeds delivered by Auten & Auten to the grantees after the death of the grantor were completely delivered. The only question presented that is surrounded with uncertainty is whether the deed naming John Megan grantee was established and delivered. An examination of the entire record demonstrates to our satisfaction that it was. Charles Auten testified that deeds were delivered to him on but two occasions, and his brothers testified that they received no deeds from Thomas Megan for safe keeping. If these statements are true and if no other person had access to this box, then the deed

to John Megan, which was withdrawn and destroyed on a second occasion, was necessarily left with the other two deeds on the first occasion. Charles Auten professes to remember nothing about the directions given him concerning the deed to John Megan. It is clear to us that if the directions concerning this deed had been different from the directions concerning the other two deeds he would have remembered this difference. This is especially true when we consider that he discussed for forty-five minutes with Thomas Megan the effect of his act of withdrawing and destroying this deed. If there had been any other or different instructions given him regarding the John Megan deed this conversation would have recalled the instructions and impressed them upon his mind. The grantor destroyed the only memorandum of directions regarding the control and disposition of this deed, and the presumption against the despoiler of evidence must prevail. While this presumption does not relieve the opposite party from the burden of establishing delivery, it does have the effect, where the evidence is vague and uncertain, of raising a presumption against the party who has destroyed the evidence which would make the facts clear. (*Hudson* v. *Hudson,* 287 Ill. 286; *Nofftz* v. *Nofftz,* 290 id. 36.) Grantees in the deed of April, 1913, are in the same position on this question as their grantor. Where, as in this case, the presumption is in favor of delivery, the burden of proving non-delivery is on the one asserting that there was no delivery. We hold, therefore, that this deed naming John Megan grantee was delivered without reservation, and that the custodian at once became the representative of the grantee and held the deed for his benefit. The destruction of the deed by the grantor was therefore ineffective because he no longer had control of it. (*Moore* v. *Downing,* 289 Ill. 612.) The contents of the deed and its execution were sufficiently proven by the declarations of the grantor and other testimony appearing in the record.

The decree is affirmed in so far as it dismisses the original bill for want of equity and is reversed in so far as it dismisses the cross-bill for want of equity. The cause is remanded to the circuit court of Peoria county, with directions to enter a decree in accordance with the views herein expressed.

*Reversed in part and remanded, with directions.*