(No. 19528.— )

PAULINE ROPACKI, Appellant, *vs.* MARY ROPACKI *et al.*
Appellees.

*Opinion filed October 25, 1930—Rehearing denied Dec. 4, 1930.*

WILLIAM T. DICKERMAN, for appellant.

SMIETANKA, RICKARD & POULTON, (JAMES A. DALEY, of counsel,) for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, Pauline Ropacki, filed her bill in the circuit court of Cook county against her son, Walter Ropacki, and her daughter-in-law, Mary Ropacki, to set aside certain deeds to real estate in Cook county. The cause was referred to a master to take the evidence and report his conclusions. The master recommended a decree as prayed, exceptions to his report were sustained, the bill was dismissed for want of equity, and an appeal has been prosecuted to this court.

The bill in substance alleged that appellant was the owner of and lived upon two lots in Chicago as her homestead; that in 1923 she was an aged woman with physical

infirmities and was in poor health; that she had great confidence in her son John, who lived with her, and she relied upon him for advice; that he falsely and fraudulently represented to her that he was not going to get married, and if she would convey to him the real estate, he, in consideration thereof, would not· marry and would continue to live with her and give her his society in their home, and would care for, maintain and support her in comfort for the remainder of her life, relieve her of all burdens of maintaining and preserving the property and permit her to live there and be the actual owner of the same; that he would make a trust deed to his brother, Walter, to protect him in receiving $5000 as a proper share of her estate upon her death; that relying upon these representations she conveyed the title to him; that he afterwards married and otherwise failed to keep his promises, and upon his death-bed, at the request of his wife, made a conveyance to Bertha Doberstein, who on the same day conveyed the property to John and Mary, his wife, in joint tenancy; that John died within an hour after making the deed; that his widow seized the title papers and is fraudulently claiming to be the owner of the property, is about to sell the same to Walter and has refused to convey it to appellant; that John was mentally incompetent to make the deed to Bertha Doberstein and was unable to resist the demands of his wife, and that all of these deeds were fraudulent, without consideration and should be canceled and removed as clouds upon the title.

The original answer of appellees denied any confidential relation between appellant and John; denied that appellant was in poor health; admitted that in consideration of the conveyance to John he was not to marry; denied that he agreed not to marry; alleged that he did care for, maintain and support appellant during his life and did relieve her of the physical burden of caring for, maintaining and preserving the premises; denied the agreement made was to

be performed during the lifetime of appellant; admitted the making of the $5000 note and trust deed by John to Walter as a means of giving Walter his share of the estate; denied that Mary was fraudulently claiming to be the owner of the property but alleged that her title was absolute and that appellant had no interest in the property; denied that John agreed to live with appellant or to give her his presence and society in their home as a loving son, and denied that he was mentally incompetent to make the deed to Bertha Doberstein.

After the master's report was filed, pursuant to oral notice given to counsel for appellant prior to the taking of evidence before the master, appellees filed an amended answer, in which they denied all allegations of the bill tending to impeach the deeds. They alleged that the principal purpose of appellant in making the conveyance to John was to provide for the distribution of her estate in accordance with the wishes of her deceased husband without the necessity of probate proceedings; alleged that the conveyance by appellant to John and the trust deed for $5000 from him to Walter were made in consideration of love and affection of appellant for her two sons and were made in order to make a distribution of her property in her lifetime; that it was the intention of the parties to reserve a life estate to appellant, to give a fixed remainder in fee to John and provide for Walter by the trust deed upon the premises; that appellant has at all times collected the rents, issues and profits from the premises and that appellees are willing that she shall so continue until her death. They offered to consent to the entry of a decree giving appellant a life estate in the premises and to do and perform any act or thing which the court might deem necessary to that end.

As ground for reversal it is insisted by appellant that the decree is contrary to the law and the evidence; that appellees have not sustained any of their defenses; that

the court erred in not considering both of the answers of appellees as a part of the record and in refusing to re-refer the case to the master to take further evidence after appellees filed their amended answer.

The evidence shows that appellant and her husband were the owners in joint tenancy of two lots in Chicago. At the time these lots were purchased there was a frame cottage on one of the lots and appellant and her husband moved upon the premises. In 1917 a brick building with an upper and a lower flat was erected. The husband of appellant did not work after 1907. Prior to his death he suggested to appellant that the property, after his death and the death of appellant, should go to John, and that John should pay Walter $5000 as his share of the estate. The husband died in 1921 at the age of seventy-six years, leaving surviving him appellant, who was sixty-six years old at that time; a son John, who was born in 1880; a son Walter, who was ten or twelve years younger than John, and some grandchildren. Walter married about that time and occupied the upper flat. John, who was unmarried, and appellant, after the death of the husband, lived in the lower flat. Mary Owczarsak, a grand-daughter, lived in the cottage. Appellant collected the rents from the premises and John paid board to her at the rate of $30 per month. On March 7, 1922, appellant made a will, in which she gave all of her real and personal property to John upon condition that he pay to Walter $5000 within one year after her death. It is the claim of appellees that the will was made at the suggestion of the husband of appellant during his lifetime. Shortly after the will was made John was informed that there might be some difficulty with reference to a contest of the will and that there would be court costs. He visited an attorney, Vincent Ignowski, and talked to him with reference to his mother making a deed in place of the will. The attorney advised against making the change and went to see appellant and talked with her with

reference to the matter. He told her she had better not make a deed and that she had better let the will stand. Appellant had a conversation with Walter with reference to the execution of the deed. Walter advised her not to make the deed but to let the will stand. She did not regard the advice of either but executed the deed on October 25, 1923. Appellant testified that she told Walter that he was to receive $5000, as his father had directed. Ignowski testified that appellant told him that the deed to John was made in order to distribute the property as provided in the will. On the same day the deed was executed to John he executed to Walter a trust deed on the property to secure the note of John for $5000, due ten years after date, with the privilege of payment at an earlier date. On June 30, 1926, John was married to appellee Mary Ropacki and they moved into the lower flat with appellant, where they lived until March 30, 1927, when John died. In March, 1927, he was removed to a hospital. On March 30, 1927, he and his wife executed a deed conveying the property to a third party, who on the same day re-conveyed it to them in joint tenancy. About one hour after these deeds were executed John died. A day or two after his funeral his widow moved from the premises. Walter and family moved some time later and appellant moved into the frame house with her grand-daughter. Appellant has collected all of the rents since the date of her deed to John and is now collecting them.

Where the evidence shows that a fiduciary relation existed, the most satisfactory evidence must be produced to show that a deed was not obtained by undue influence. (*Seeberger* v. *Seeberger,* 325 Ill. 47; *Rutherford* v. *Schneider,* 307 id. 28.) Where a confidential relation exists and a gift is made to the person in whom the confidence is reposed by reason of the relation the gift is *prima facie* void. (*Gregory* v. *Gregory,* 323 Ill. 380.) The law presumes from the mere existence of the relation that the gift was obtained by improper means, and the burden of proof is

upon the donee to show that it was the free and voluntary act of the donor. (*Gilmore* v. *Lee,* 237 Ill. 402.) Undue influence such as will vitiate a deed means wrongful influence, operating, at the time the deed was made, with such force as to deprive the grantor of free agency. (*Sargent* v. *Roberts,* 265 Ill. 210; *Fitzgerald* v. *Allen,* 240 id. 80; *Sears* v. *Vaughan,* 230 id. 572.) Influence procured through affection is not wrongful, and it has been held that when a deed is made in favor of a child at his solicitation and because of affection for him it is not procured by undue influence. (*Dowie* v. *Sutton,* 227 Ill. 183.) The mere fact of the relationship of parent and child does not, where the parent is the grantor and the child the grantee, raise any presumption of undue influence. (*Smith* v. *Kopitzki,* 254 Ill. 498.) In such a case there must be proof of fraud or undue influence in fact in order to avoid the deed on those grounds. (*Sears* v. *Vaughan, supra; Hoelscher* v. *Hoelscher,* 322 Ill. 406.) A contract of this character is rescinded and a deed made in consideration of such contract is set aside only where such facts are shown as will warrant the presumption that the contract was entered into and the deed secured with the fraudulent intent on the part of the one securing the title not to perform the conditions of the contract. (*Detienne* v. *Detienne,* 291 Ill. 439; *Chamberlin* v. *Sanders,* 268 id. 41; *Wood* v. *Leeka,* 262 id. 607; *Stebbins* v. *Petty,* 209 id. 291.) A deed procured by honest argument untainted with fraud or by proper and legitimate influence honestly acquired is not invalid. (*Valbert* v. *Valbert,* 282 Ill. 415; *Dowie* v. *Sutton, supra.*) Mere advice, argument or persuasion does not constitute undue influence if the grantor acts freely when he executes the deed though it would not have been made except for the advice, argument and persuasion. (*Campbell* v. *Freeman,* 296 Ill. 536.) A deed voluntarily made in consideration of care and support will not be set aside if the grantee has substantially and fairly performed the contract even though

he may have failed in trivial matters. (*Meyer* v. *Meyer,* 247 Ill. 535; *Pittenger* v. *Pittenger,* 208 id. 582.) Mere vexations and annoyances of the grantor, caused by quarreling in the family at a time long after the deed was executed, are not ground for setting aside a deed. (*Detienne* v. *Detienne, supra; Hagan* v. *Waldo,* 168 Ill. 646.) A slight or partial neglect on the part of one of the contracting parties to observe some of the terms or conditions of the contract will not justify the other party in abandoning or rescinding the same. A deed made in consideration of the support of the grantor will only be set aside where there has been an entire failure or refusal to perform the contract in respect to such material matters as would render the performance of the rest a thing different from what was contracted. (*Meyer* v. *Meyer, supra; Pittenger* v. *Pittenger, supra.*) The deed cannot be set aside for the reason that the grantee has been prevented by reason of his death from carrying out the contract to furnish support to the grantor during her lifetime. Where the grantee complies with the contract up to the time of his death there can be no presumption of fraud on the part of the grantee. *Calkins* v. *Calkins,* 220 Ill. 111; *Stebbins* v. *Petty, supra; Seymour* v. *Belding,* 83 Ill. 222.

Appellant testified that at the time she executed the deed the bones of her legs hurt, that one leg was shorter than the other, that she had strained herself from work, and that she had been ruptured for fifteen years and had rheumatism. These were the only physical ailments to which she testified. She did not testify that she did not know what she was doing or that she was mentally incompetent to make a deed, but, on the contrary, the evidence shows that she was mentally competent to dispose of her property as she saw fit and that she had been warned not to make the deed. From October 25, 1923, until June 30, 1926, John and his mother lived together prior to his marriage, and there is no evidence of any difficulty or any

neglect on his part or any failure to comply with the terms of the contract. The evidence shows that during this period he and his brother made certain improvements upon both buildings. There is very little, if any, evidence tending to show that appellant made any objection to the marriage of John. On the contrary, there is evidence tending to show that she was willing that he should be married. Ignowski testified that he told appellant that John might marry, and that she replied that if he married she would be satisfied. Walter testified that John's marriage was agreeable to appellant, but she wanted him to be married at his home and not at the home of his bride. There is evidence tending to show that a marriage between John and his cousin, who lived in Milwaukee, was not objectionable to appellant. After the marriage John and his wife moved into the apartment with appellant. He had been paying $30 per month board and he directed his wife to purchase the groceries. His mother told him that if he intended to purchase the groceries it would not be necessary for him to pay her the $30 per month, and the payments ceased. The only evidence that immediately upon the marriage John began to neglect his mother is the testimony of appellant. She testified that after the marriage he and his wife always sat in the dining room, and he would not talk to appellant because he was angry and irritated; that all he did was to look at his plate while he was eating and when he got through eating he went up-stairs. There is no evidence of abuse of any kind or character. There is no evidence that appellant was not furnished sufficient quantity and quality of food, and the whole charge, as alleged in the bill, of the failure to comply with the contract is the testimony of appellant substantially as above set forth. The evidence shows that after the deed was executed to John he began saving money in order to pay Walter. Shortly after Christmas, 1926, he told his mother that he could pay Walter a part of what was coming to him. Appellant told him to do so,

and she gave him $2800 which he had placed in her hands for safekeeping. Mary testified that after her marriage to John appellant told her the property would belong to her and John after appellant's death and if John died first the property would belong to Mary. After the funeral of John, Walter asked his mother to live with him, but she refused to do so. After the death of John his widow offered to sell to Walter all of her interest in the property for $3000, and the transfer was prevented by the protest of appellant. Prior to John's death appellant collected $35 per month as rent of the premises and since his death she has collected $80 per month. If there was any difficulty between the parties it arose several months after John was married, and no claim of a forfeiture was made until after appellant learned of the deed from John and his wife and the re-conveyance to them in joint tenancy. If John promised to support his mother and preserve and maintain the premises, then according to her testimony he broke that promise as soon as he made it, but no complaint was made for four and one-half years thereafter. If John promised not to marry he broke that promise, yet appellant received him and his wife into her home, and for some time, at least, they lived peaceably without any cause for complaint. If John promised to support appellant, why did she continue to purchase food and demand nothing from him in return, and as soon as he started purchasing food requested him to stop paying board, which he had previously done? Even if it be conceded that a fiduciary relation existed between John and his mother, the evidence fails to show that appellant was entitled to the relief prayed. The evidence does not show that the deed from appellant to John was obtained by fraud or undue influence, neither does it show that John did not comply with the terms of the contract with his mother or that he was mentally incompetent to execute the deed from himself to Bertha Doberstein. *Mc-Gregor* v. *Keun,* 330 Ill. 106.

Appellant's motion to amend her bill, re-refer the cause to the master and tax costs was properly denied. The proposed amendment does not appear in the abstract. The motion was based on an alleged lack of notice of the intention of appellees to amend the answer. From the affidavit filed by counsel for appellant it appears that she at all times had notice of the intention of appellees to amend the answer, and the case was tried on the theory that the amendment had been filed. Appellant testified on the trial that she was the owner of the premises up to the time of her death and after her death Mary and Walter could do as they pleased with the premises. She was asked if that was her position, and her counsel said that it was not. Under these circumstances she cannot now complain that she was not at that time offered a decree granting her a life estate. An amendment to her pleading would have been necessary for the entry of such a decree, and she clearly showed that she had no intention of making such an amendment or accepting a life estate. The affidavit filed in support of the motion of appellant shows that Ignowski and Mary Owczarsak were the witnesses who were to testify to the new matter set out in the motion. Both of these witnesses were available on the trial but were not used. The amendments by appellees merely made the pleadings conform to the proof, and no error was committed in refusing to permit appellant to amend her bill and re-refer the cause to a master to take evidence.

We find no reversible error, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*