Davis et al. v. Hopkins.

Wm. N. Davis et al., Appellants, v. S. B. Hopkins, Appellee.

APPEAL FROM KENDALL.

Where a party, at a public land sale by the government, agreed by parol with the person in possession of such land, and who had made improvements thereon, to bid off his claims and advance the money at 20 per centum per annum, and took the title in his own name, *held* that such a contract is not within the statute of frauds, but is a loan, and subject to the objection of usury for the excess of interest over the lawful rate, and that upon the payment to the person entering the land of the principal and lawful interest, equity will compel him to convey the land to the person, or his assigns, for whose benefit the land was entered. *Held*, also, that any attempt to complicate the transaction by taking the title in a third person's name under the pretence that it was for such third person, will not prevent a court of equity from investigating and ascertaining its true character, and if satisfied that this machinery was used to conceal its true character of a loan, of so declaring it. *Held*, also, that the purchaser and grantee of the person entering land on such a contract, was bound to take notice of the equitable rights of the person in possession of the land. *Held*, also, that the purchaser and grantee of the person having the equitable title under such a contract, might file his bill to redeem said land, and by

executing a release, could use his grantee as witness to prove the contract, and that its terms had been complied with by him, the witness.

THIS was a bill filed in the Kendall circuit court, by the appellee against the appellants, for a conveyance of the lands therein mentioned.

The nature and object of the bill sufficiently appear in the opinion of the court.

This cause was heard and decree entered at the March term, 1854, of the Kendall Circuit Court, LELAND, Judge. The decree appears in the opinion, and from which decree the defendants appealed.

SCATES, J. At the public land sale of the government at Chicago, on the 13th of February, 1843, Davis bid off the east half N. E. 31, and east half S. E. 30, T. 37, north range, 8 east, 3d principal meridian, lying in Kendall county, the first at $1.28, and the last at $1.25 per acre, and took a certificate of entry in the name of Geo. A. O. Beaumont. On the 20th of November, 1843, Beaumont conveyed these tracts to Davis, and on the 23d of November, Davis entered at the land-office the west half of 31. Beaumont's deed to Davis was not recorded. So the matter stood until the 4th of May, 1848, when Davis conveyed all these lands to Francis Howe.

On the 9th of March, 1849, the defendant Hopkins filed this bill against Davis, Howe, and Israel P. Vancleve and wife, praying a conveyance of these lands from Davis and Howe to him.

The allegations of the bill may be summed up as presenting the following case, and which is not designated or characterized as a bill for a specific performance, or a bill to redeem a mortgage.

Previous to 1840, Arnold and Judson owned a " claim " and an improvement on these lands of the government, which they sold to Vancleve for $300 or thereabout, under which purchase Vancleve took possession as early as 1840.

He attended the public sale in 1843, for the purpose of securing these lands, but not having the money to pay for them, he applied to Davis, his neighbor, to purchase them for him. He declined, for want of money to spare, but took the numbers of the tracts. Vancleve then procured Dr. Foster to agree to enter an 80 acre tract of them. Again meeting with Davis just as the biddings commenced, Davis inquired how he was succeeding, and upon being informed of this partial arrangement, offered to

enter the whole, and insisted upon Vancleve's repeating his par-
tial arrangement with Foster, that he might as well have the
whole as a part, and immediately went to the sale and com-
menced bidding against Foster, who was not informed of the
new arrangement until Davis publicly announced that he was
bidding for Vancleve, when Foster desisted, and Davis became
the purchaser. The terms agreed upon with Foster, were, the
repayment of the purchase-money with 25 per cent. interest
per annum until paid. These terms had been made known to
Davis with the arrangement, and in relation to them he said, he
would enter the whole upon as good terms as Dr. Foster, and
accordingly bid off the land as stated. The bill states the terms
with Davis to be 20 per cent. per annum. This is the substance of
the contract set up in the bill. The subsequent parts of the bill
contain a detail of facts in relation to subsequent interviews
and conversations between Vancleve and wife, and Davis and
Beaumont, and Davis alone, in one of which the rate of inter-
est was fixed at 20 per cent.; also of Vancleve's procuring the
necessary amount of money, and offering to pay upon receiving
a deed, but which was refused on various pretexts; also, that
Vancleve had performed work, &c., for Davis, which Davis
agreed should be in payment of the land, and which, together
with money paid, exceeded the amount due for the land. The
bill further shows two conveyances by quitclaim from Vancleve
and wife to Hopkins with delivery of possession. The first on
the 21st of December, 1847, in which, by mistake, a part of the
land was omitted; the second on the 2d of June, 1848, includ-
ing the whole to correct the mistake. Possession from 1840 to
1848 is alleged in Vancleve, and since in Hopkins, as well as
improvements by former; and notice is charged upon Howe of
Vancleve's title by this possession, and by the filing of a former
bill, 11th of March, 1848, which was dismissed for want of suf-
ficient averments of tender. I deem any further detail here
unnecessary.

Davis answered without oath, denying, generally, the mate-
rial facts in the bill, and relied upon the statute of frauds.

Howe's answer is sworn, setting up his purchase for a valu-
able consideration, denying notice; after his death his widow
and heirs answer, generally, that they know nothing.

Vancleve and wife admit all the statements of the bill.

Hopkins executed a general release to Vancleve and wife,
and took their depositions. The plaintiffs introduced the former
bill in evidence.

The court decreed the transaction to be a loan of money;
found that the contract was usurious; that the purchase-money

44 *

with 12 per cent. had been paid; and decreed a conveyance. And this decree is the error assigned.

The view we take of this case, renders it unnecessary to examine or discuss many of the points raised upon the argument.

The proofs do not show a case of a combination, or an agreement to prevent competition at the biddings; consequently no question can arise as to a fraud upon the government under the act of congress.

Neither do we place it upon the ground of an exception out of the statute of frauds. If it depended upon this, it might be difficult to distinguish it from that class of cases held to be within the statute, where the refusal to execute the parol agreement, made void by the statute, is the ground of fraud upon which it is sought to take it out of the statute. This would, in effect, repeal the statute. Unless there be other circumstances of fraud, than merely such refusal, equity would hardly grant relief.

This case has, indeed, other such circumstances, but they will only be referred to as illustrative of the ground upon which we place it, and not for the purpose of discussing the statute of frauds.

We are of opinion that the court below correctly found that the contract set up in the bill constituted a loan, and that the proofs in this respect sustained the allegations. The same question was before us at this term, in Smith et al. *v.* Sackett et al., post, p. 528, in which this court affirmed a decree which found a loan of money, under circumstances as complicated and multifarious as these. The case of Williams *v.* Bishop et al., post; though reversed, was not for any error in the determination in this respect, though the weight of evidence seemed to be the other way. The question, indeed, is not entirely new, for it arose in Miller et al. *v.* Thomas et al., 14 Ill. R. 428, and was found to be a loan. Indeed, it seems to be a device resorted to for the concealment of usury, or hard and unconscionable terms, but is destined to defeat, whenever its true character may be reached and exposed by proofs. I do not perceive that it opens the door any wider than it already stands, to combinations of frauds and perjury. All our transactions are liable to the same, where we are destitute of evidence for their exposure; and the remedy proposed, by disregarding, would equally apply, and exclude all testimony, verbal or written, because it might be the result of combination, fraud, deceit, perjury, and forgery.

It is true the principal witnesses in this case, Vancleve and his wife, occupy an exceedingly hazardous and delicate position,

Davis et al. *v.* Hopkins.

and one which exposes their motives and veracity to question from either side as they may testify against it. From the plaintiffs, that they testify from motives of revenge for disappointed hopes, or with secret expectations of gain by Hopkins's success. From defendant, that they had related as facts a state of case to which they refuse to swear, and have so deceived and defrauded him of the consideration paid, or, in reclaiming the account on Davis, that they perjured themselves for gain. No one with a proper sense of self-respect and self-protection, would ever, officiously or voluntarily, seek such a position. Nor does it appear they have. There is no interest in the event, apparent on the record, but the contrary; and upon their *voir dire* they deny any not apparent. They are, therefore, competent, and I may add, their credibility is unimpeached, and, I therefore presume, unimpeachable. J. P. Vancleve testified substantially to the conversations and offers of Davis as charged in the bill, except that the per cent. was to be as good as Dr. Foster would do. His testimony also shows that Davis afterwards agreed to receive his work and labor towards the payment for the land, and encouraged him to do his work by saying that it was as easy a way as any to pay for it; and with this object in view, he neglected his own, and worked for Davis at times when he otherwise would not. His whole bill of work amounted to as much as the debt and interest, though this declaration, that it should go on the land, was not repeated at such hiring, or job of labor done by him. He and his wife both show that in different conversations with Davis and one with Davis and Beaumont, they promised to let them have the land whenever the money was ready, and at 20 per cent. interest.

They are corroborated in part by their son, to whom Davis said he intended to let Mrs. Vancleve have the land. The money was procured in the course of two or more years, and, although a legal technical tender is not proven, it was offered to him by them, and he informed that they had it, were ready, willing, and anxious to pay it and take a deed, and were only prevented from making payment or a legal tender, by his excuses for not being ready and able to convey.

The excuses were, that the land was bought for, or in the name of his brother, who lived in New York, and who had the necessary papers. This statement was also made by Beaumont, that he had, as agent of Mr. Davis of New York, bought for him such lands as were pointed out by plaintiff, W. N. Davis. This is also set up in the answer as a defence.

Had this been true, we suppose it was susceptible of proof. None, however, is offered; neither is there any offered, why the

certificate of entry was taken in Beaumont's name, or of any consideration paid by Davis to Beaumont, or his brother, for the lands conveyed to him by Beaumont. We are left to conjecture, and the most natural one, in connection with the facts of the case, is, that the use of Beaumont's name in the certificate, and of his brother's in the statement, was for the purpose of some concealment. So far as the proof goes, we must regard the plaintiff as the real and only party in the transaction; and will view and treat the case as if no other had been named or connected with it. Further, we cannot resist, wholly, the impressions this course of dealing is calculated to produce; that this machinery was used to conceal the true character of the transaction as a loan, and complicate and invest it with the character of a parol agreement for the purchase or sale of land.

Here, too, as in the case of Sackett in Smith et al. *v.* Sackett et al., the purchaser of the government has neglected and failed to show, that he attended the sale of lands for the purpose or with the wish to invest in lands, or that he had any wish to purchase this particular tract, until requested to do so by Vancleve for him. The manner in which his attention is called to these particular tracts, and his purchase under the circumstances, driving off Dr. Foster by his competition and announcement, from making Vancleve a loan of the value of one 80 acre tract, all tend to show, and do show, that he was ready, willing, and did agree by his bidding on the land, to loan Vancleve the amount the lands would bring. And this would be a good contract of loan, without a specified rate of interest, or time of repayment. The law would fix the first, and when it became due, presently on demand. It is objected to as showing a contract for want of mutuality; but I think groundlessly, for the proofs now before us would sustain an action for the money with interest.

The objection to the uncertainty in the contract alleged and proved, as to the rate of interest, might have weight on a bill for specific performance of a parol contract under the statute of frauds. But in an action for money loaned, or in this case of a bill to redeem, the essential matter is the loan, and with it will be awarded such interest as may be proven. We are not disposed to regard, in such a case as this, a misdescription as to the amount of interest as a fatal variance in the description of the contract.

The length of time between this purchase and the assertion of it, as one absolute in his own right by Davis, and his concealment of the fact of a conveyance from Beaumont to him, by not having it recorded, while, at the same time, he held out

to Vancleve that the title was in his brother, all for the space of near five years, strongly corroborate the statement of Vancleve in relation to its being a loan. A further corroboration is found in the fact, that during all this time Davis asserted no claim at all for himself, and none for his brother, either to the possession or for rents, though Vancleve continued in the open possession, asserting to Davis his claim and right to it under the arrangement for its entry, and from time to time, until he became ashamed, he says, demanding a deed or a bond for title; and especially, when about to make repairs, urging that he did not want to spend his money without something to show title, and again Davis assuring him he should have the land.

It is, indeed, impossible to resist the conclusion that there was a contract for the land, without wholly discrediting the Vancleves' testimony, and equally clear is the character of that contract a loan of money.

The objections to the contract charged, and the one proven that the returns are not clearly, precisely, fully, and specifically shown, have but little weight against a contract for the loan of money. The law will fill up sufficient details to such a contract, by imposing an obligation for repayment with interest. If one advance money for another's use at his instance, without more, the law will fix lawful interest as an incident, and make it due upon request. If the lender desire greater interest he must bargain for it; if the borrower require longer time he must specify it.

The very paucity of facts in this negotiation, tends strongly to show it a loan. Vancleve applied to Davis to secure his "claim." No one acquainted with the situation of the country, and the circumstances and condition of the people in relation to the public lands, would understand this application as a request to purchase the land for the purpose of selling it again to Vancleve. But every one familiar with the manner of settling upon, and improving the public lands, and of purchasing when able, would at once understand and comprehend such an application as one for a loan of money. The manner of securing that loan, by taking the title to the lender, could make no difference.

Again, it appears from the proofs that soon after Vancleve sold to Hopkins, Davis for the first time set up title adverse to the alleged arrangement by giving Vancleve notice to quit. Vancleve delivered possession to Hopkins about the 1st of March, 1848; and on the 4th of May following Davis conveyed to Howe, who pursued this adverse claim by bringing an ejectment, and recovering judgment.

Howe comes in under such circumstances, at such a juncture of the transaction, and after so long, open, and undisputed a possession, that we cannot regard him as a *bonâ fide* purchaser without notice for a valuable consideration. His answer, which is made to a full disclosure of all these facts in the bill, and to direct interrogatories as to the *bona fides* of his purchase, is not full, open, and direct. He makes no answer as to the *bona fides* of his purchase, and is rather otherwise evasive in relation to an understanding that the lands were to be reconveyed. The consideration he paid was two promissory notes payable to Davis or order, which are neither paid nor transferred, though he would intimate that they may be. His equitable claims are further weakened by the fact, that he not only purchased at an undervalue, but without knowing or seeing the premises, and deeming it necessary immediately to give back an immediate agency the same day to Davis, to watch over and protect the lands from trespassers, &c., under which Davis caused the ejectment suit to be instituted and prosecuted. This part of the transaction looks to me to be a contrivance, under a thin and transparent veil, like the certificates of entry in the name of Beaumont as the property of Davis's brother in New York; and which found their way back into W. N. Davis, by conveyance from Beaumont, without any proof of purchase of or payment for them, other than the face of the deed. Howe must be held to all the consequences legitimately arising from the constructive notice by possession.

The question arising upon the proof of the former bill is one of some difficulty, in relation to the identity of the causes of action or subject-matter of the bill. In Gray et al. *v.* Gillilan et al., ante, p. 453, decided at this term, I felt a necessity to examine the authorities at some length; and from the authorities the court arrived at a conclusion, that it is necessary to plead a former recovery to constitute a bar by estoppel; but that under the general issue, it will become conclusive in evidence. The estoppel and conclusiveness operates upon the causes of action and defences apparent upon the face of the record, and also all that were actually investigated, if properly admissible under the pleadings, though not apparent upon the face of the record; and under which will be included transactions, the merits, validity, and fairness of which may have been investigated. And this will include the transaction as a whole, although it were drawn in by an investigation of only part, when that part was determined upon the ground of fraud or want of consideration in the transaction itself, and to the same effect where a transaction had been split up, and part investigated and passed into judgment.

Davis et al. *v.* Hopkins.

The difficulty arises as to the identity of the causes. Hopkins, to show notice to Howe, avers as *pendente lite* a bill filed by him against Davis for the same causes, and which, he states, was dismissed on demurrer for want of a sufficient tender. Davis answers, that it was not dismissed for the reason alleged, but for want of equity. The other defendants do not notice these allegations. By agreement this record is admitted before the court at the hearing, subject to all exceptions. None are taken, except as to its effect, upon the argument.

Upon inspection of the record, we find a bill between different parties, and apparently for a different cause of action, yet with so many earmarks as strongly induce the belief that the allegation is true. Still there is the allegation of the party upon the record that it is the same, against the truth of the record as to identity. The former bill sets out a very similar, or I may say, identical, negotiation for the entry of one of these tracts only, between Vancleve and Davis, and at Chicago; but this contract was made more than a year before the one in this bill. It was in January, 1842. Most of the other facts are very similar to these as far as they go. Howe was not a party; and even if the same transaction need not have been, as it was, filed before he bought. Vancleves are not parties, though shown to be vendors by quitclaim, as in this, and to have held and claimed an open account, which is there also offered as payment and set-off. That bill shows a want of proper parties, so far as Hopkins claimed any equity in, or control over, this account, and might properly enough have been dismissed upon that ground, which was specially assigned as one of the causes of the demurrer. Where there are causes assigned which go to the merits, and others which do not, and a general judgment, it is difficult to determine that the cause was heard upon its merits.

With these difficulties in the way of determining that there was such a judgment in bar as could be pleaded or would conclude in evidence, and more particularly as we must find the truth of the allegations in this bill, as to identity, against the truth of the record offered in evidence, we must solve the difficulty by the principles of the case of King, on the prosecution of Smith *v.* Taylor, 3 Barn. & Cress. R. 402, (10 Eng. C. L. R. 231,) by estopping the party from contradicting the record, which showed the offence to have been committed in a former reign, but which the party alleged was committed in the then present reign.

The only remaining question is in relation to the account. This calls for a passing notice merely. Vancleve's testimony

clearly shows that this account was to be received in payment by express agreement of Davis. This was not, nor did it become necessary to repeat the argument in relation to each successive employment of Vancleve. Having the assurance that his labor should go in payment of the land, it became the duty of Davis to notify him when this arrangement was to change. Until such notice, each successive item of labor became payment to the extent of its value, unless Davis shows some other application of it. He alleges large demands against Vancleve, exceeding the whole account, and an indebtedness to him of a balance of several hundred dollars. As this is not responsive to the bill, it was necessary he should prove his account, if he desired to meet and absorb all or any portion of the account of Vancleve. Having offered no proof, we presume there was no account. Vancleve proves the account to an amount exceeding the purchase-money and interest at the highest rate named.

It is, therefore, unnecessary to examine the question, whether Hopkins can plead the usury.

*Decree affirmed.*