(No. 14735.—Decree affirmed.)

David Stephens, Plaintiff in Error, *vs.* H. K. Clark, Defendant in Error.

*Opinion filed October 21, 1922—Rehearing denied Dec. 13, 1922.*

1. Specific performance—*when specific performance will be denied because of misrepresentations.* The rule that a vendee can not complain of misrepresentations where he had an opportunity to ascertain the truth is not applied with strictness in a suit by the vendor for specific performance, and where the representations were made by the vendor as statements of fact, with the intention that they be relied upon, and where the evidence tends to show he procured false bids at his auction sale to induce the vendee to bid an excessive price, he is not entitled to specific performance.

2. Same—*specific performance rests largely in discretion of the court.* A bill for specific performance is addressed to the sound legal discretion of the court and will not be decreed simply because there is a legal contract, clear and unambiguous in its terms.

3. Same—*contract will not be enforced if procured by fraud.* To entitle a party to specific performance in a court of equity he must come with clean hands, and where fraud, unfairness or advantage has been taken to procure the contract it will not be enforced, and evidence may be sufficient to defeat a bill for specific performance although not sufficient to authorize a decree for rescission of a contract.

4. Same—*same care is not required of vendee in equity as in action at law.* The rule requiring a vendee, where he has opportunity, to make a careful inspection for his own protection is not applied as strictly in suits in equity as in actions at law, particularly in suits for specific performance.

5. Same—*vendee cannot be charged with negligence in relying on vendor's fraud.* The party guilty of fraud in a transaction will not be permitted by a court of equity to benefit by it, and in a suit by the vendor for specific performance the vendee cannot be charged with negligence in relying on false statements of the vendor as to material facts which the vendor knows to be false and which he intends shall be believed and relied on.

6. Same—*when the question of laches of defendant cannot be raised on appeal.* In a suit by a vendor for specific performance of a contract for a conveyance, the complainant cannot contend, on

appeal, that the defendant was guilty of *laches* in not repudiating the contract and notifying complainant of his intention to do so before the date fixed for performance, where the question was not raised by the pleadings nor on the hearing in the trial court.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. JOE A. DAVIS, Judge, presiding.

R. L. RUSSELL, (L. O. EAGLETON, of counsel,) for plaintiff in error.

C. A. TRIMBLE, PERRY D. TRIMBLE, and J. L. SPAULDING, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error is prosecuted from a decree dismissing a bill filed by David Stephens, plaintiff in error, against H. K. Clark, defendant in error, for specific performance of an agreement to purchase land.

Prior to September, 1920, complainant owned a farm consisting of two adjoining quarter sections of land in Lee county. He advertised it for sale September 21, 1920, by auction on the premises. The advertisement was published in a newspaper and posted in various places in the vicinity of the farm. Defendant was in the market to buy a farm. He saw the newspaper advertisement of complainant's farm. The day before the sale was to be made, defendant and his son, Francis, thirty years old, were passing by a farm in Bureau county where a sale was going on. They stopped and had some conversation with the auctioneer, Miles Fox. He told defendant he was going to sell complainant's farm in Lee county the next day and asked defendant and his son to attend the sale. They were unacquainted with the farm but drove to it the next day, arriving there at about one o'clock P. M. No one was there when they arrived and they spent a little time looking at the outbuildings. Very soon after their arrival, the complainant, Fox and a man named Lucas arrived in an automobile. At the suggestion of Fox

defendant and his son got in the automobile and drove with the other occupants across a part of the farm in a north-westerly direction to approximately the center of the south quarter section of the farm. They left the automobile there and walked north to some point in the south 80 of the north quarter section of the farm. They then returned to the house and the sale began very soon thereafter. J. W. Fehring, who was present at the sale, made the first bid of $100 per acre. Without any other bid being made he later raised his bid to either $112 or $114 per acre. Defendant's son, with his father's consent, bid for defendant $118 per acre, and the farm was struck off to him at that price. At the suggestion of complainant or Fox the parties then drove to Princeton, where Fox procured the lawyer who prepared the agreement, which was signed by complainant and defendant. By the contract defendant agreed to pay complainant $37,760 for the farm. There was a mortgage on the farm of $16,000, which defendant was to pay as a part of the consideration. He was to give a note of even date with the contract for $3776, payable March 1, 1921, and on that date was to pay $17,984 in cash, with the privilege of paying $10,000 of it in bankable notes, and the deed was then to be made to him. Defendant failed and refused to make the payments and carry out the agreement on his part, and on the 28th of March, 1921, complainant filed a bill for specific performance. The answer to the bill averred complainant falsely and fraudulently misrepresented the character of the farm, its soil, fertility, freedom from stone and sand, for the purpose of inducing him to purchase the farm; that complainant knew his statements and representations were false and he made them for the purpose of defrauding defendant; that defendant believed said statements and representations were true, and relying upon their truthfulness was induced to bid the sum of $118 per acre for the farm and to sign the contract; that for the purpose of defrauding defendant, complainant or his agent fraudu-

lently procured other persons at the sale to make what are called "by-bids;" that such bids were made and were not *bona fide* and good-faith bids, but were made to induce defendant to bid more money for the land than it was worth or would have sold for in the absence of such by-bidding; that after the day of the sale defendant made investigation of the land and found it was of very poor quality, never had and never would raise good crops, and never was worth anywhere near $118 per acre.

Defendant and his son testified complainant told them when they went out on the farm before the sale that it was nearly all good, productive land and would raise good crops of corn and other grain; that the low, wet land was well drained by tile and there were not more than 30 acres of the farm sandy. He pointed out to them parts of the land they did not go upon and described the soil and its good, productive qualities. When questioned about some of the farm where nothing but weeds were to be seen, he said the land was as good as any in the farm but he had a worthless tenant. The Clarks called complainant's attention to some stones showing above the surface and inquired about the amount of stone on the farm. Complainant said the stones had been gathered and would not interfere with plowing and cultivating the land; that a furrow could be plowed either north and south or east and west across the farm without taking the plow out. He said there were two wells on the farm, neither of which went dry. They testified complainant said the farm was all good, productive land, except not to exceed 30 acres of sand. Defendant proved by numerous witnesses that there was a much larger part of the land which was sandy and unproductive than represented by complainant. Some witnesses who had been tenants on the farm and others who had examined it and dug into every 40 acres on the farm with a spade, estimated the area of sand to be from 41 to 129 acres. They also testified there was some low, wet land, which some of them de-

scribed as peat and said it was alkali land. Many of them testified that the sand and alkali land would not raise good crops; that there was quicksand on the sides of some hills which teams could not be driven through, and there were blow-outs in some places, which they defined to be sand which was moved and shifted by the winds. A tenant on the farm testified only one of the wells was used, and that one he pumped dry every day in the summer. Two tenants who had farmed the land before the sale testified there were stones and rock all over the north quarter section of the farm; that they interfered with plowing and cultivating the land and frequently broke plows and double-trees. While complainant denied making some of the statements and representations testified to by the Clarks, and offered testimony of other witnesses that there was a smaller acreage of sand on the farm than defendant's witnesses testified to and that the soil was productive and produced good crops, we are of opinion the greater weight of the evidence was on the side of defendant, and warranted the chancellor in finding that complainant had falsely misrepresented the character and value of the farm.

Complainant insists that defendant had an opportunity to examine the farm; that he went on and examined part of it before the sale; that he had been a farmer all his life and might by the exercise of ordinary caution have ascertained by his own inspection whether the land was what it was represented to be by complainant, and he cannot now be heard to say he was deceived and defrauded. That rule is not applicable to this case. The representations made by complainant were not as to matters of opinion but were made as statements of fact. They were made with the intention that defendant should believe and rely on them, and he testified he did believe and rely on them. In a specific performance case the rule contended for by complainant is not applied the same as in a case to set aside a conveyance or rescind a contract. There is no dispute that defendant's

bid of $118 per acre was the first and only bid made by him at the sale.  J. W. Fehring was a spectator at the sale.  He testified Fox, the auctioneer, before the sale began asked him to help sell the farm by bidding on the land.  Fehring said he did not want to buy the farm, and Fox told him any bid he made would not be considered a *bona fide* bid. Fehring then bid $100 per acre, and after crying that bid for some time Fox again went to Fehring and asked him to make another bid, which would not be considered a *bona fide* bid.  Fehring thereupon made another bid of $112 or $114 per acre.  Francis Clark, son of defendant, with his father's consent bid $118.  After he had made that bid he asked Fox if the previous bids were legitimate, and said if they were not he did not want the auctioneer to take his bid.  Fox assured him they were legitimate bids.  The evidence, to our minds, is conclusive that all the bids made before defendant's bid of $118 per acre were not *bona fide* bids but were made for the purpose of inducing defendant to make a higher bid.  Fox was the agent of complainant in the transaction, and the conclusion is warranted that he acted with the knowledge of complainant.

A bill for specific performance is addressed to the sound legal discretion of the court and will not be decreed simply because there is a legal contract, clear and unambiguous in its terms.  A court is not warranted in arbitrarily refusing to decree specific performance where a valid contract was fairly and understandingly entered into, but the right to have specific performance depends upon the circumstances of the particular case, and where fraud, unfairness or advantage has been taken to procure the contract it will not be enforced in equity, and courts will inquire into the circumstances of the making of the contract and whether fraud, unfairness or advantage has been taken in procuring it.  To entitle a party to specific performance in a court of equity he must come with clean hands.  The agreement must have been fairly entered into, without misapprehen-

sion or misrepresentation.  Evidence may be sufficient to defeat a bill for specific performance although not sufficient to authorize a decree for rescission of a contract.  A court of equity will not enforce specific performance when it would be unconscionable to do so.  *Race* v. *Weston,* 86 Ill. 91; *Tamm* v. *Lavalle,* 92 id. 263; *Leonard* v. *Crane,* 147 id. 52; *Maltby* v. *Thews,* 171 id. 264; *Mack* v. *McIntosh,* 181 id. 633; *Union Colliery Co.* v. *Fishback,* 299 id. 165; *Miller* v. *Clark,* 301 id. 273; *Kilcoin* v. *Ortell,* 302 id. 531.

The rule requiring a vendee, where he has the opportunity, to use reasonable care in inspection for his own protection, is not applied as strictly in suits in equity as in actions at law, especially in suits for specific performance. A vendee cannot be charged with negligence in relying on false statements of the vendor as to material facts which the vendor knows to be false and which he intends shall be believed and relied on.  A party who is guilty of fraudulent conduct whereby he induces another to act will not be allowed to impute negligence to the latter against his own deliberate fraud.  The party guilty of the fraud will not be permitted by a court of equity to benefit by it.  *Linington* v. *Strong,* 107 Ill. 295; *Leonard* v. *Springer,* 197 id. 532; *Woodruff* v. *Day,* 278 id. 199; *Gilbey* v. *Hamlin,* 297 id. 258.

In his brief complainant contends defendant was guilty of *laches* in not repudiating the contract and notifying complainant of his intention to do so before the date fixed for its performance.  That question was not raised by the pleadings nor on the hearing in the court below.  It cannot be raised for the first time here.  (*Vollenweider* v. *Vollenweider,* 216 Ill. 197; *Elting* v. *First Nat. Bank,* 173 id. 368.) Even if it had been raised below, we are of opinion there is no place for its application under the facts in this case.

The decree is affirmed.

*Decree affirmed.*