CAHOKIA SPORTSERVICE, INC., *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS LIQUOR CONTROL COMMISSION, Defendant-Appellant.

(No. 75-209;

Fifth District—October 8, 1975.

William J. Scott, Attorney General, of Springfield (Lee D. Martin, Assistant Attorney General, of counsel), for appellant.

Robert F. Hanley, Rodney D. Joslin, and Barbara S. Steiner, all of Chicago, and John T. Roach, of Roach, Keshner & Wyss, of Alton (Jenner & Block, of counsel), for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is an interlocutory appeal taken by defendant, Illinois Liquor Control Commission, from a denial of defendant's motion to dissolve a stay order issued by the circuit court of St. Clair County on April 25,

1975, and from a denial of defendant's motion to strike and dismiss plaintiffs' complaint for administrative review. Defendant raises two issues: (1) whether the court abused its discretion by refusing to apply the "clean hands" doctrine to dissolve the stay order and to strike the complaint, and (2) whether plaintiffs' complaint was insufficient to state a cause of action entitling plaintiffs to any injunctive relief whatsoever.

Before beginning our discussion of this case we wish to point out that in both the brief for the appellant and the brief for the appellees citations were made to abstract opinions of the courts of this State. Neither side, however, included in its brief a copy of the abstract opinions cited. We therefore remind these parties and all other parties who come before this court that Rule 8 of the Uniform Appellate Rules (Ill. Rev. Stat., ch. 110A, § 908) provides:

> "The opinions of the Illinois Appellate Court which have been published in abstract form only, shall not be cited in the briefs of litigants unless the entire text of said abstract opinion is appended to the brief."

This unambiguous Rule is for the convenience of the court as well as that of the opposing party and should be complied with.

Plaintiffs, Cahokia Sportservice, Inc., Chicago Sportservice, Inc., Illinois Sportservice, Inc., and Maywood Sportservice, Inc., have each held licenses issued by the Illinois Liquor Control Commission for several years. Each of these corporations is part of a large, interrelated system of wholly owned subsidiaries or sub-subsidiaries of which Sportsystems Corporation is the parent corporation.

Prior to the organization of Sportsystems in 1970 or 1971 this system of corporations was organized under the parent Emprise Corporation. On July 10, 1972 Emprise was convicted in the United States District Court for the Central District of California for its 1966 violations of 18 U.S.C. §§ 371 and 1952. The conviction was affirmed by the Ninth Circuit Court of Appeals (500 F.2d 856) and certiorari was subsequently denied by the United States Supreme Court (419 U.S. 1120).

Because of the conviction of Emprise in the Federal district court, and a few other matters we need not concern ourselves with here, the Illinois Liquor Control Commission on July 18, 1973, sent Cahokia Sportservice a citation and notice of hearing to show cause why its Illinois license (which was not to expire until April 30, 1974) should not be revoked. The hearing was scheduled to be held on August 28, 1973.

The primary reason for the citation and notice of hearing sent to Cahokia Sportservice are the provisions of the Illinois Liquor Control Act found in Ill. Rev. Stat., ch. 43, § 120(2), (4), (8), and (10), which state:

"No license of any kind issued by the State Commission or any local commission shall be issued to:

\* \* \*

(2) A person who is not of good character and reputation in the community in which he resides;

\* \* \*

(4) A person who has been convicted of a felony under any Federal or State law, if the Commission determines, after investigation, that such person has not been sufficiently rehabilitated to warrant the public trust;

\* \* \*

(8) A person who at the time of application for renewal of any license issued hereunder would not be eligible for such license upon a first application;

\* \* \*

(10) A corporation, if any officer, manager or director thereof, or any stockholder or stockholders owning in the aggregate more than 5% of the stock of such corporation, would not be eligible to receive a license hereunder for any reason other than citizenship and residence within the political subdivision;"

Sometime after sending the citation the commission decided not to proceed with that part of the citation dealing with section 2(2) of article VI (§ 120(2)) of the Liquor Control Act. Also, thereafter, the citation was amended to include the other Illinois corporations which were part of the system and which held licenses from the Illinois Liquor Commission, namely, Chicago Sportservice, Maywood Sportservice, and Illinois Sportservice.

The commission ordered its staff to prepare a rehabilitation report pursuant to section 2(4) (§ 120(4)). The report was issued February 14, 1975, and concluded that the licensees had not been sufficiently rehabilitated to warrant the public trust. Among the matters taken into account in the report was a bribery incident involving one of the licensees. The report described the incident as follows:

"On May 28, 1974 Commission Agents William Duncan and Alvin Shapiro inspected the premises of Maywood Sportservice, Inc. Of the twelve bottles they removed from the premises for inspection, three were reported by chemist Hans Stieren to be 'not genuine.' Peter Varlas, the Manager of the premises, has testified under oath that after giving the agents a free meal and free drinks he was solicited for and did offer a bribe to the agents of $300.00 to miscarry their official duty of reporting further violations. William

Duncan did accept and has been indicted for accepting said bribe."

After the staff report was issued the licensees were ordered to, and did, respond to the report. A full hearing on the matter of the licenses was thereafter held before the Commission on March 3, 1975. Eight days later the Commission ordered the licenses of the four corporations revoked, stating that the corporations had not been sufficiently rehabilitated since the Emprise Corporation conviction.

Subsequently the four corporations, plaintiffs, filed a complaint for administrative review in the St. Clair County circuit court pursuant to section 8b of article VII of the Liquor Control Act and section 5 of the Administrative Review Act (Ill. Rev. Stat., ch. 43, § 154(a), and ch. 110, § 268). Pursuant to section 12 of the Administrative Review Act and "An Act * * * in relation to injunctions" (Ill. Rev. Stat., ch. 110, § 275 (1)(a), and ch. 69, § 1 et seq.) plaintiffs moved for a stay of the revocation order issued by defendant commission. On April 9, 1975, the court issued an order by which the Commission order was stayed, and by which the Commission was enjoined from interfering with plaintiffs because they lacked liquor licenses, pending the conclusion of the administrative review. Thereafter defendant Commission filed its motions to dissolve the court's order and to strike the complaint, which were denied.

On this appeal the Liquor Control Commission asserts, as it did before the circuit court, that plaintiffs should have been denied the stay order because of the "clean hands" doctrine. The Commission contends that the court in not applying that doctrine to refuse the requested stay order committed a clear abuse of discretion. The Commission bases this contention on the fact that the Maywood Sportservice bribery incident occurred while the revocation-rehabilitation hearings were in process and on the fact that Peter Varlas, the man who paid the bribe, is still an employee of this interrelated system of corporations.

■■ It is undisputed that the circuit court under section 12(2)(a) of the Administrative Review Act (Ill. Rev. Stat., ch. 110, § 275(1)(a)) has the discretionary power to stay the decision of an administrative agency pending final disposition of the review of that decision. (*Group Securities, Inc. v. Carpentier,* 19 Ill.App.2d 513, 154 N.E.2d 837.) The court also has the traditional powers of a court of chancery to implement the stay until final disposition of the case, by issuance of an injunction against the appropriate parties. (*Continental Air Transport Co. v. Carpentier,* 19 Ill.App.2d 340, 152 N.E.2d 488, *reversed on other grounds,* 17 Ill.2d 312, 161 N.E.2d 99.) A stay order issued in a proceeding to review the revocation of a license does not have the effect of giving the

license a continuing validity. (*People ex rel. Carpentier v. Goers*, 20 Ill.2d 272, 170 N.E.2d 159.) Its only effect is to prevent the licensing commission from denying the party who has been granted the stay order the benefits of a license until the decision of the commission has been reviewed.

■■ A stay order, or supersedeas, is generally considered as in the nature of a substitute for a bill in equity. (83 C.J.S. *Supersedeas* § 1, at 890-91 (1953).) The power to grant or refuse a stay appertains to equity in the enforcement of equitable principles, and amounts to granting or refusing injunctive relief. (*School District No. 46 v. Del Bianco*, 68 Ill.App.2d 145, 215 N.E.2d 25, 28.) Assuming therefore that equitable maxims can apply when a party seeks a stay order, we turn to the question whether the trial court abused its discretion in not applying the "clean hands" doctrine in the case at hand.

■■ In *Shadden v. Zimmerlee*, 401 Ill. 118, 127-28, 81 N.E.2d 477, 482, the Illinois Supreme Court stated:

> "The cases cited by the plaintiffs herein correctly state the rule that a person cannot come into equity with unclean hands and seek justice. We state the rule to be, however, that the maxim is limited in its application to where the substance of the thing itself is inequitable and the inequity must apply to the particular subject matter. (*Mills v. Susanka*, 394 Ill. 439.) It is not sufficient to bar relief that inequitable conduct should relate to the proof of some item or some fact, and where the origin of the claim is not inequitable, a fraudulent act in relation to it will not bar relief."

Also see *Illinois Power Co. v. Latham*, 15 Ill.App.3d 156, 303 N.E.2d 448, for substantially the same statement.

Furthermore, the "clean hands" doctrine is not a judicial straightjacket, is not favored by the courts, is not intended to prevent equity from doing complete justice, and its application is a matter for the sound discretion of the court. *Maroney v. Maroney*, 109 Ill.App.2d 162, 249 N.E.2d 871, 874; *Illinois Power Co. v. Latham;* 30 C.J.S. *Equity* §§ 98, 99, at 1034, 1036, 1037, 1048 (1965).

■■ Applying these authorities to the instant case, we hold that the circuit court did not abuse its discretion in refusing to apply the "clean hands" doctrine to deny plaintiffs the stay order. The Maywood Sportservice bribery incident was only one fact or item to be considered in determining whether plaintiffs had rehabilitated themselves sufficiently to retain their licenses. It did not make the origin of their request for a stay order inequitable. In granting the stay order the court had to consider not only the Maywood Sportservice bribery incident and other alleged misconduct relating to plaintiffs, but it also had to consider what

consequences a denial of the request for a stay order might ultimately have. Cahokia Sportservice operates food and beverage concessions at the Cahokia Downs Race Track. Chicago Sportservice, Illinois Sportservice, and Maywood Sportservice do the same at Chicago Stadium, Comiskey Park, and Maywood Park Race Track, respectively. Without a stay of the Commission's order revoking the plaintiffs' licenses, plaintiffs would be unable to continue to operate these concessions. It is natural to assume that the owners of the sports facilities would make other arrangements to provide for these concessions. Should the Commission's order later be reversed in the process of administrative review, plaintiffs would have suffered irreparable injury. Considering all of these factors, we do not think the circuit court acted improperly in granting the stay order and denying the Commission's motion to dissolve that order.

■■ Defendant Commission next contends that the trial court erred in refusing to strike or dismiss plaintiffs' complaint on the basis that it was insufficient to state a cause of action for injunctive relief. We decline to reach the merits of this issue in that it is not properly before this court. The lower court's granting, refusing, dissolving, or refusing to dissolve a stay order is an appealable interlocutory order under Supreme Court Rule 307(a) (Ill. Rev. Stat., ch. 110A, § 307(a)). (*Medline Industries, Inc. v. Pascal,* 23 Ill.App.3d 346, 319 N.E.2d 310; *Wiseman v. Law Research, Inc.,* 133 Ill.App.2d 790, 270 N.E.2d 77.) On the other hand, however, the denial of a motion to strike or dismiss, of itself, is not a final and appealable order under the Civil Practice Act or Supreme Court Rule 307; it is merely an interlocutory order which is not a final disposition of the proceeding sufficient to confer jurisdiction on an appellate court. *Chicago Housing Authority v. Abrams,* 409 Ill. 226, 99 N.E.2d 129; *George F. Mueller & Sons, Inc. v. Daly,* 124 Ill.App.2d 265, 260 N.E.2d 319; *Celano v. Frederick,* 54 Ill.App.2d 393, 203 N.E.2d 774.

For the reasons stated above, the order of the circuit court denying defendant's request to dissolve the stay order is affirmed. The appeal from the refusal of the circuit court to strike or dismiss plaintiffs' complaint is dismissed.

Affirmed in part; appeal dismissed in part.

EBERSPACHER and CARTER, JJ., concur.