GEORGE METCALF *et al.*, Plaintiffs-Appellees, *v.* THEODORE ALTEN-RITTER *et al.*, Defendants-Appellants.

Fifth District    No. 76-58

Opinion filed March 14, 1977.—Rehearing denied October 24, 1977.

Donald E. Groshong, of East Alton, for appellants.

Donald L. Metzger, of Edwardsville, for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendants, Theodore and Rena Altenritter, appeal from an order of the Circuit Court of Madison County granting possession of certain property to the plaintiffs, pursuant to the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1975, ch. 57, par. 1 *et seq.*), and denying defendants' counterclaim to have plaintiffs' deed to the property declared a mortgage. See Ill. Rev. Stat. 1975, ch. 95, par. 55.

■■ Plaintiffs have filed in this court a motion to dismiss defendants' appeal, arguing that notice of appeal was not filed in accordance with section 18 of the Forcible Entry and Detainer Act. (Ill. Rev. Stat. 1975, ch. 57, par. 19.) We ordered that the motion be taken with the case. Defendants filed notice of appeal on November 12, 1975, 13 days after the entry of judgment. At that time, section 18 required the filing of notice of appeal within five days from the rendition of judgment.[1] However, the supreme court and not the legislature has the rule-making responsibility for appeals under the Illinois constitution of 1970. (Ill. Const. 1970, art. VI, §§1, 16; *Zavaleta v. Zavaleta*, 43 Ill. App. 3d 1017, 358 N.E.2d 13 (1st Dist. 1976); *In re Estate of Barker*, 24 Ill. App. 3d 959, 321 N.E.2d 709 (4th Dist. 1974), *rev'd on other grounds*, 63 Ill. 2d 113, 345 N.E.2d 484 (1976); *cf. People v. Kennedy*, 43 Ill. 2d 200, 251 N.E.2d 209 (1969); *People ex rel. Stamos v. Jones*, 40 Ill. 2d 62, 237 N.E.2d 495 (1968).) Supreme Court Rule 1 states that the rules on appeals supersede inconsistent statutory provisions. (Ill. Rev. Stat. 1975, ch. 110A, par. 1.) Supreme Court Rule 303 allows the filing of notice of appeal within 30 days after the entry of final judgment. (Ill. Rev. Stat. 1975, ch. 110A, par. 303.) Rule 303 once specifically stated that it did not apply to forcible entry and detainer cases, but that exception was deleted by amendment, effective September 1, 1974. It is, therefore, apparent that section 18 of the

---

[1] Section 18 has since been repealed by Public Act 79-1365, effective October 1, 1976.

Forcible Entry and Detainer Act conflicts with Supreme Court Rule 303 and that the provisions of Rule 303 must prevail. Defendants' notice of appeal, filed within the time required by Rule 303, was timely. Plaintiffs' motion is denied.

We will now consider the substantive issue raised by defendants. The relevant facts, summarized below, were undisputed at trial. In December of 1973, Gerald and Cecile Mateyka listed their home for sale with Metcalf agency, realtors. On December 10, defendants, the Altenritters, entered into a contract with the Mateykas, agreeing to purchase the Mateykas' property for $32,000. Defendants also gave $500 earnest money to the agency representative who arranged the sale. January 11, 1974, was designated as closing day. On the advice of the Metcalf agency, defendants then contacted the Bank of Edwardsville, which agreed to lend them money to cover part of the purchase price.

On closing day, defendants presented a check for $20,106 to the bank and signed a mortgage agreement and promissory note for $12,000 in payment of the contract price and closing costs. At trial, Mrs. Altenritter testified that she signed and delivered the check in reliance upon an investment of $15,000 which she had made 13 years earlier with B & J Construction Company, located in White Plains, New York. She knew absolutely nothing about this company, and, apparently, had never communicated directly with it. Mrs. Altenritter stated, however, that prior to closing day she called a friend and fellow investor, Dorothy Fisher, who lived in New York, and asked her to withdraw the money invested in B & J and to mail it to the Illinois State Bank of East Alton, Mrs. Altenritter's payor bank. Ms. Fisher agreed to do so. George Metcalf testified that defendants' earnest money was returned to them on closing day. Metcalf, who was an insurance agent as well as a realtor, sold defendants a homeowner's insurance policy for $145. After receiving defendants' check and the mortgage agreement, the bank paid the Mateykas the full purchase price of $32,000. It seems likely that such payment was made on January 11, although the date of payment is not definitely established in the record. The record does not indicate whether the Mateykas, at any time, delivered a deed to anyone conveying their property to the defendants.

On January 14, the Monday immediately following closing day, defendants moved into their newly "purchased" home. On the same day, however, defendants' check for $20,106, marked "Insufficient Funds," was returned to the Bank of Edwardsville. John Hunter, the bank president, called Mrs. Altenritter and informed her that the check had not cleared. According to Mrs. Altenritter, she was surprised by this revelation and called Dorothy Fisher to ask what had happened. Ms. Fisher informed her that it was impossible to withdraw the money from B & J because the

Altenritters would "lose everything" in the process. After her conversation with Ms. Fisher, Mrs. Altenritter spoke once again with John Hunter and told him that she owned certificates of deposit which she would use to cover the down payment. At trial, Mrs. Altenritter admitted that she had been lying about the certificates. Relying on Mrs. Altenritter's assurances, Hunter held the check for a few days. He then called the Illinois State Bank of East Alton, which informed him that Mrs. Altenritter's account was still insufficient to cover the check. Hunter, therefore, called Mrs. Altenritter, who said that she needed six months to provide the needed money. Hunter and George Metcalf agreed orally to give Mrs. Altenritter the six months she requested. Hunter told her that if she could pay $10,000 cash, the bank would lend her the additional $22,000. A warranty deed conveying the property in question from the Mateykas to George and Phyllis Metcalf was then properly prepared and delivered. This deed was dated February 12, 1974, and recorded on February 27. The unrecorded mortgage agreement signed by the Altenritters on closing day was cancelled, and George Metcalf signed a new $22,000 mortgage note. John Hunter advanced $10,000, which he borrowed from institutions other than the Bank of Edwardsville, to cover the balance of the $32,000 purchase price. Defendants thereafter remained in the home and paid $210 per month as rent for a number of months. Testimony indicates that this figure was based upon the interest due on the mortgage signed by Metcalf, but Metcalf also testified, as an expert witness, that $250 per month was a reasonable rental value for the house. Mrs. Altenritter also presented John Hunter with a check for $700 in order to reimburse him for the interest payments on his loans. There was testimony indicating, however, that this check was never cashed.

After the Altenritters had lived in the house for over six months, George Metcalf listed it for sale and began showing it to prospective purchasers. Mrs. Altenritter was aware of Metcalf's actions. When the Altenritters ignored Metcalf's demand that they vacate the premises, this action was instituted.

Defendants' initial argument, stated simply, is that they own the disputed property. It has been noted that on closing day defendants signed a mortgage agreement and the Mateykas were given the full purchase price of $32,000 by the bank. Defendants contend that, in return for the purchase price, the Mateykas must have given the bank a deed conveying the property to defendants. Title to property passes upon valid delivery. After delivery, any attempt to revoke a conveyance through destruction or repossession of the deed is ineffectual. (*Scales v. Mitchell,* 406 Ill. 130, 92 N.E.2d 665 (1950); *McReynolds v. Miller,* 372 Ill. 151, 22 N.E.2d 951 (1939); *Waters v. Lawler,* 297 Ill. 63, 130 N.E. 335 (1921).) It follows, therefore, that if a validly executed deed were properly

delivered on closing day, the subsequent deed given to the Metcalfs could have conveyed nothing.[2]

■■ It seems probable that a deed was transferred on closing day as defendants allege. That deed, however, was not introduced at trial and the record does not show that defendants made any attempt to locate it. If the deed were lost or destroyed, defendants had the burden of proving, by clear and convincing evidence, that it was executed and delivered as required by law. (*Franzen v. Donichy,* 9 Ill. 2d 382, 137 N.E.2d 825 (1956); *Schnepper v. Ashlock,* 404 Ill. 417, 88 N.E.2d 853 (1949); *Shipley v. Shipley,* 274 Ill. 506, 113 N.E. 906 (1916); *In re Application of County Treasurer,* 14 Ill. App. 3d 765, 303 N.E.2d 476 (1st Dist. 1973).) Defendants' failure to do so requires us to reject their argument.

■■ Defendants also contend that the Metcalfs' deed should have been construed a mortgage. The Metcalfs would then not be entitled to maintain an action for forcible entry and detainer but would have to foreclose on the property just as any other mortgagee.

It is a fundamental rule that one seeking equitable relief cannot take advantage of his own wrong or, as otherwise stated, he who comes into equity must come with clean hands. (*Plenderleith v. Glos,* 329 Ill. 382, 160 N.E. 745 (1928); *Stephens v. Clark,* 305 Ill. 408, 137 N.E. 227 (1922); *Patient Care Services, S.C. v. Segal,* 32 Ill. App. 3d 1021, 337 N.E.2d 471 (1st Dist. 1975).) Equitable relief may be denied if the applicant is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought, provided that it is in connection with the transaction under consideration. (*Illinois Power Co. v. Latham,* 15 Ill. App. 3d 156, 303 N.E.2d 448 (5th Dist. 1973).) Application of the "clean hands" doctrine is a matter for the sound discretion of the court. *Cahokia Sportservice, Inc. v. Illinois Liquor Control Com.,* 32 Ill. App. 3d 801, 336 N.E.2d 276 (5th Dist. 1975).

■■ We are of the opinion that the Altenritters came into and remained in possession of the disputed property through their own misconduct. Mrs. Altenritter's testimony concerning the B & J Construction Company is hardly believable. Assuming, however, that the Altenritters did have an interest in such a company, their extremely careless attempt to obtain the money from that investment in order to cover their check for $20,106 is

---

[2] The alleged deed conveying title to defendants was not recorded, but the Metcalfs' deed was. This would not have affected defendants' right to the property vis-a-vis the Metcalfs, however, because George Metcalf could not have been a bona fide purchaser. Only bona fide purchasers are protected by the Recording Act. (See Ill. Rev. Stat. 1975, ch. 30, par. 29; *Snyder v. Partridge,* 138 Ill. 173, 29 N.E. 851, 32 Am. St. R. 130 (1891) (subsequent purchaser bound by actual notice of prior conveyance); *Burnex Oil Co. v. Floyd,* 106 Ill. App. 2d 16, 245 N.E.2d 539 (1st Dist. 1969), *appeal after remand,* 4 Ill. App. 3d 627, 281 N.E.2d 705 (1st Dist. 1972) (purchaser chargeable with knowledge of facts inconsistent with record owner's claim of ownership).)

evidence of bad faith. The Altenritters also retained possession of the property through repeated lies concerning their monetary sources. Mrs. Altenritter admitted as much in her trial testimony. Under these circumstances, the Altenritters' attempt to invoke the equitable powers of this court is barred by the "clean hands" doctrine.

■■ For the following reasons, we also feel that the Altenritter's contention lacks substantive merit. In equity, the substance of a transaction controls, not its form. Accordingly, a conveyance of land, seemingly absolute, will be treated as a mortgage if it were intended as security for the payment of money. (Ill. Rev. Stat. 1975, ch. 95, par. 55; *Warner v. Gosnell,* 8 Ill. 2d 24, 132 N.E.2d 526 (1956); *Scott v. Beach,* 172 Ill. 273, 50 N.E. 196 (1898); *Davis v. Hopkins,* 15 Ill. 519 (1854).) The one asserting that a deed absolute in form is a mortgage has the burden of proving that fact in a clear, satisfactory and convincing manner. (*Brust v. Brust,* 405 Ill. 132, 89 N.E.2d 897 (1950); *Burroughs v. Burroughs,* 11 Ill. App. 3d 176, 296 N.E.2d 350 (3d Dist. 1973).) The question whether a deed which is absolute in form is to be taken as a mortgage depends upon the intentions of the parties at the time of its execution. (*Warner v. Gosnell,* 8 Ill. 2d 24, 132 N.E.2d 526 (1956).) The existence of a debt is, of course, the essential element in a constructive mortgage case and defendants have not proved that they owe a debt to the Metcalfs or to anyone else. We feel that the conveyance to the Metcalfs was intended, by everyone involved in this action, to relieve defendants of their debt for the purchase price of the Mateykas' property. In fact, defendants were not parties to the transaction. The deed was from the Mateykas, as grantors, to the Metcalfs, as grantees. John Hunter and George Metcalf did agree to reconvey the property to defendants if defendants paid $10,000 within six months. This oral promise, however, was unenforceable and did not create a mortgagor-mortgagee relationship between plaintiffs and defendants. Ill. Rev. Stat. 1975, ch. 59, par. 2; *Kelly v. Lehmann,* 297 Ill. 33, 130 N.E. 375 (1921); *Stamberg v. Hiller,* 41 Ill. App. 2d 229, 190 N.E.2d 627 (4th Dist. 1963).

For the reasons stated above, the decision of the Circuit Court of Madison County is affirmed.

Affirmed.

EBERSPACHER and G. J. MORAN, JJ., concur.